512 A.2d 635

**Phillip MARINELLO, Appellant**

**v.**

**Karin MARINELLO.**

Superior Court of Pennsylvania.

Argued Oct. 22, 1985.

Filed June 9, 1986.

472

Sallie A. Radick, Pittsburgh, for appellant.

474

Before SPAETH,* BROSKY, ROWLEY, WIEAND, MCEWEN, CIRILLO, OLSZEWSKI, MONTEMURO and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from an order dismissing appellant's exceptions to a decree of equitable distribution subsequent to divorce.[1] A brief chronology of crucial events is in order.

On January 1, 1980, appellant/husband filed a complaint in divorce in Allegheny County alleging indignities. Appellee's answer of February 1st sought dismissal. In October appellant commenced an action for partition of entireties property by filing his complaint in Westmoreland County. Three weeks later appellee filed a petition with the Allegheny County court to proceed under the new Divorce Code, and was allowed to amend her answer to the complaint to include a request for equitable distribution. Two years later, appellant petitioned the Allegheny County Court to amend his complaint to conform to the Divorce Code. Appellee's answer again requested equitable distribution. In October of 1982, a hearing was held by a Westmoreland County Master on the partition action which is still unresolved as of this writing. In February 1983, after a hearing in the Allegheny County Court of Common Pleas, a divorce was granted and the distribution Order underlying this appeal issued.

The parties had been married on July 17, 1976. For the nine years prior to that time appellee had leased at nominal rental a house owned by her grandmother. The parties resided there together before the marriage, and for approximately one year afterward. Three months after the wedding appellee's grandmother deeded the property to her daughter, appellee's mother, who then, with her husband, transferred it to the parties. One year after the transfer

---

* Judge Spaeth did not participate in the final vote in this case as he left the bench in retirement before its conclusion.

1. We note that another case similar in implications, if not in circumstances, to the one at bar, is also pending before this Court en banc. *Goldstein v. Goldstein*, 354 Pa.Super. 490, 512 A.2d 644 (1986).

the house was sold, and the proceeds used as a down payment on the marital residence which forms the major object of the partition action. The parties lived in that house until appellant removed himself by mutual agreement in October 1979. In June of the same year, appellant ceased all contributions to maintenance of or payment for the house.

Appellant has presented us with three issues. The first challenges the jurisdiction of the Allegheny County court over the subject matter of the distribution Order; the second and third claim error in the court's treatment of marital property for the purposes of equitable distribution, and the formula under which the property was apportioned between the parties.

The real question posed by the train of events in this case, however, is the procedural connection between partition of entireties property independent of the divorce proceeding, and equitable distribution under the Divorce Code of 1980: does the former segue into the latter, and if so how? To ask the question another way, is partition of entireties property superceded by a request for equitable distribution under the new Divorce Code? [2] The most definitive answer we can give, as will appear below, is "not quite."

The pivotal point from which various interpretations radiate is 23 Pa.S.A. § 301(a)(1), which provides that, "in conjunction with any decree granting a divorce," the court shall "determin[e] and dispos[e] of property rights and interests between spouses ... including the partition of property held as tenants by the entireties or otherwise ..." Equitable distribution becomes a factor when either party requests it,

**2.** Perlberger, in the 1985 Supplement to Pennsylvania Divorce Code, relies on *Platek, infra,* for the proposition that "a request for equitable distribution precludes a trial court from exercising its partition prerogatives in section 301(a)(1)." We obviously do not reach a similar conclusion since we believe it to be an impermissibly broad extrapolation of Judge Spaeth's holding in *Platek,* and further, in contravention of the Code section cited which specifically preserves the partition option.

and the property to be divided is "marital property" as defined by section 401.

There are three major approaches which have been taken to define the problem, each of which presents its own peculiar defects. The first, espoused by the Allegheny County judge hearing appellant's divorce and appellee's claim for equitable distribution, proceeds from the presumption that the Allegheny County divorce court retained jurisdiction to equitably distribute the property involved after and however Westmoreland County disposed of the partition action. In other words it was concluded that entireties property, although halved between the parties, remained marital possessions subject to (re)distribution according to the precepts of the Divorce Code. The obvious problem with this schema, redundancy apart, is that no trial court has the authority to reexamine the issues of a case disposed of by another court at the same level. Also we are faced with the 401(e)(4) exception to marital property in that any property acquired as separate property during separation (an order of partition creates separate property) until the date of divorce, is not construed to be marital property subject to equitable distribution.

The second proposed solution protects the status quo ante, rejecting any attempt to reconcile the conflicts engendered by the "hither and yon" school of paper filing in domestic relations cases. This solution is in fact none at all as it ignores the policy behind passage of the Divorce Code, that is, "to effectuate economic justice between the parties." 23 Pa.S.A. § 102(a)(6). In so doing this combination filing race/hands off approach allows, under the guise of jurisdictional purity, the sort of retrograde treatment of marital disputes which prompted passage of the Divorce Code to begin with. *See Butler v. Butler*, 464 Pa. 522, 347 A.2d 477 (1975), where the Pennsylvania Supreme Court refused to remedy unequal consideration in the creation of entireties estates. *See also Gordon v. Gordon*, 293 Pa.Super. 491, 439 A.2d 683 (1981).

The third tack is that of preemption, its theory being that the filing of a request for equitable distribution results in the indiscriminate extinction of a prior partition action, regardless of its motivation or basis in fact. If for example partition was sought prior to entry of a divorce decree in order to arrest or deter dissipation of entireties assets, equitable distribution, which must wait upon finalization of the divorce, would dislodge the suit for partition. During the pendency of the divorce litigation, the property could be disposed of altogether, absent injunctive relief under Pa.R. C.P. 1920.43(a), and the accounting need not necessarily factor in (its dissolution) as a debit to the wastrel.[3] Distribution under such circumstances could hardly be termed equitable. Further, preemption is in derogation of section 301 which clearly reserves partition as a prerogative of the court, given a claim.

Case law has in fact made provision for unilateral dissipation of assets, viz, the classic *Vento* partition. *Vento v. Vento*, 256 Pa.Super. 91, 389 A.2d 615 (1978). However, planned deliquescence is by no means the only obstacle in the way of achieving real economic parity between divorcing spouses. Although partition is theoretically implicit in equitable distribution, given the facts which would dictate its adoption as a means to accomplish equity, (and we offer this as an apologia for the retention of partition as an *always* available option, despite its apparent inconsistency with the avowed objectives of the Code), the reverse, that equality encompasses equity, is not always true. As this Court held in *Platek v. Platek*, 309 Pa.Super. 16, 24, 454 A.2d 1059, 1063 (1982),

> It is apparent ... that the court's power to direct partition of property is qualified by its duty to divide marital property in an equitable way ... For partition is an even division ... But an equitable division often will not be

3. Although it is clear that, "intentional dissipation of marital assets by one party does not preclude its status as marital property in equitable distribution," *Semasek v. Semasek*, 331 Pa.Super. 1, 8–9, 479 A.2d 1047, 1051 (1984), it should be equally obvious that one cannot get blood out of a turnip.

even; the essence of the concept of an equitable division is that "after considering all relevant factors," the court may "deem[ ] just" a division that awards one of the parties more than half, perhaps the lion's share, of the property.

Indeed equitable distribution is a misleading concept, as equity has yet to be achieved in practice. While courts have paid lip service to the notion that the nurturing partner's contribution to marriage is equivalent in value to that of the wage earner, "equitable distribution", as thus far applied, has resulted in an immediate 73 per cent drop in the standard of living enjoyed by divorced wives and their children, while the ex-husbands experience a corresponding 42 per cent increase. L. Weitzman, *The Divorce Revolution* (1985).

■■■ It is, therefore, our task to devise a means of accommodating partition as an "equitable" practice in order to achieve substantial justice, and in instances such as the one herein to avoid duplication of judicial procedures. That objective is best accomplished, we believe, by active retention of both methods of allocating property as options available to the court. Preservation, in turn, can be achieved procedurally by the following: complaints in partition will require, at the outset, factual averments consonant with a set of criteria to be established beforehand, e.g. *Vento* situation; such allegations must then be proven. In post-divorce partition, pursuant to 68 P.S. § 501, a statement that the parties were husband and wife, acquired certain property by the entireties and were subsequently divorced, will suffice to activate equal division.[4] *Olivieri v. Olivieri*, 242 Pa.Super. 457, 364 A.2d 361 (1976). The only set off or deduction in such case would be liens entered of record and not matters such as support or equitable adjustments that might be considered under equitable distribution proceedings. *See Lykiardopoulos v. Lykiardopoulos*, 453 Pa. 290, 309 A.2d 548 (1973). Subsequently filed equitable

4. 68 P.S. § 501. Divorced tenants by entireties hold as tenants in common; suit for sale and division of proceeds.

distribution requests, pursuant to a divorce action, will not oust, but will stay *Vento* styled partition actions, and at the same time operate as the mechanism through which consolidation of all divorce-related property claims may be channeled to the court where jurisdiction is proper. That court, with partition data already before it, or if too little time has elapsed, partition proof ready to be heard, can then evaluate the evidence, grant immediate partition if appropriate, and if not, enter the divorce decree and allocate property in accordance with the equities of the case, the partitioned property retaining its character as separate property. Under this formula, pre-divorce partition becomes a matter of proof in conjunction with the equities that are relevant to a claim for equitable distribution; post-divorce partition represents only one of an infinite number of proportional dispositions of marital property.

We believe this result to be dictated by a number of considerations the most important of which is the need to realize the intent of the legislature in enacting the Divorce Code, again, "to effectuate economic justice between the parties," (supra) in cases where divorce is inevitable. The instant case offers an instructive, if ironic, example. Appellant requested partition of the property, although equitable distribution was available due to passage of the Act, largely we find because he felt that his award would be considerably larger. While this is not precisely a case of forum shopping, since the filing of partition actions involving real estate is governed by a specific venue provision, Pa.R.C.P. 1552,[5] it is similar in objective. It is clear under the law that partition cannot lie during marriage except in the *Vento* situation, which allows partition when there has been misappropriation of entireties property during marriage by way of a legal fiction, which treats such action as an offer to terminate the entireties. Since we do not have the merits

5. Rule 1552. Venue
   An action for the partition of real property, including an action in which the Commonwealth is a party, may be brought in and only in a county in which all or any part of any property which is the subject matter of the action is located.

of the partition proceeding before us, we are not certain of the factual supports for the action, but it would appear that the partition action would not have been sustainable prior to the divorce. Had appellant chosen to request equitable distribution, which has no distinctive venue rules, he could have done so in Allegheny County, his choice for a divorce forum. While certainly appellant has the right to request partition, he also has the obligation to demonstrate its appropriateness. Given his subsequent election to bring his divorce claim under the new Code, we feel that he has shown only a strong penchant for economic expediency which is unconvincing in the context of equity.

This Court held in *Gantz, v. Gantz,* 338 Pa.Super. 528, 488 A.2d 17 (1985) that the joinder and counterclaim provisions of section 301(a)(1) [6] were designed "to make mandatory, rather than permissive, the consolidation of all issues germane to the dissolution of a marriage so as to prevent fragmentation ..." *Id.,* 338 Pa.Superior Ct. at 532, 488 A.2d at 19. In *Altschuler v. Altschuler,* 334 Pa.Super. 111, 482 A.2d 1106 (1984), support issues raised by the wife in one county were transferred and consolidated with the husband's divorce, custody and equitable distribution claims raised in another. These cases clearly reflect our determination that the need for expeditious action includes within its definition comprehensiveness. The bifurcation of divorce and economic issues contemplated by the Code, and approved by this Court in *Wolk v. Wolk,* 318 Pa.Super. 311, 464 A.2d 1359 (1983) is first of all for the court, not the parties, *Id.* (See also *Thill v. Larner,* 321 Pa.Super. 62, 467 A.2d 894 (1983); and secondly is meant to apply to a

**6.** 23 P.S. § 301. Jurisdiction

　　(a) The courts of this Commonwealth as defined in § 104 shall have original jurisdiction in cases of divorce and for the annulment of void or voidable marriages *and where they have jurisdiction,* shall determine in conjunction with any decree granting a divorce ... the following matters where raised in the complaint or the answer, an issue appropriate decrees or orders with reference thereto and may retain continuing jurisdiction thereof:
　　(1) the determination and disposition of property rights and interests between spouses ...

temporal hiatus between procedures taken under the aegis of one court, not a dispersal of juridical splinters to any court(s) within reach.

To reconcile the various governing rules, and clarify the question of where to consolidate the various procedural members in environmentally schizophrenic cases such as the one before us, we must decide the question raised by section 301 of proper jurisdiction (see footnote 6), and incidentally address appellant's first challenge to the Allegheny County Order. Appellant claims that the Allegheny County court had no jurisdiction over the subject matter of the equitable distribution Order, that is, the realty and personalty situated in Westmoreland County. We agree, but not for the reasons or with the effect appellant advances. His grounds for objection are limited to the argument that appellee's preliminary objections to the partition action filed in Westmoreland County were tantamount to a request there for proceedings under the new Divorce Code. Having delivered himself of this premise, appellant proceeds to deduce as follows: The court's denial of the objections is equivalent to a removal of the cause from the ambit of the Code, which makes equitable distribution unavailable anywhere, since *Gordon, supra,* makes such Orders final, and no appeal therefrom was lodged. We decline to make the quantum leap this theory requires, and add that *Gordon* is extraordinarily liberal in its view on when applications to proceed under the Code should be granted, finding few if any reasons to deny such petitions. We note in this regard, that appellant made no objection to appellee's request before the Allegheny County court to proceed under the Code, nor to her prayer for equitable distribution until three years later at the hearing thereon, after a second, similar request had been made.

The Westmoreland County court denied appellee's preliminary objections to venue on the grounds that the partition action was properly placed there under Rule 1552, because there had been no *prior* request for equitable distribution in Allegheny County. Implicit in the Opinion is the theory

that jurisdiction is vested in the court before whom a property related claim is first made. However, we repeat, no objection in any form was raised to the equitable distribution requests until the hearing in 1983.

We must now decide where jurisdiction obtained under section 301. In this context it is important " ... to distinguish 'venue' from 'jurisdiction'; the terms may not be used synonymously. While jurisdiction is the power and authority of the court to act, venue is the place where the power to adjudicate is to be exercised, that is, the place where the suit may be or should be heard." 77 Am.Jur.2d Venue § 1.

We would now turn to the views expressed by Judge Wieand in his Concurring and Dissenting Opinion. We cannot agree with his conclusion that the result of any partition remains marital property, which is subject to the power of the divorce court to decree equitable distribution. Partition creates separate property whether it be prior to the divorce or subsequent to it. Once it is separate property, it is subject to the provisions of 401(d)(8) *"The value of property set apart to each party,"* as one of the considerations in equitable distribution. This is so because pre-divorce partition is identical in effect to an agreement of the spouses during coverture to dissolve the entireties and to take the divided shares as separate property of each. In *Berhalter v. Berhalter*, 315 Pa. 225, 229, 173 A. 172, 173 (1934), the earliest case in our Supreme Court, on Partition during coverture, that court said:

(When) defendant appropriated to her own use, the funds which plaintiff and defendant agreed to hold in an estate by entireties and this constituted in law an election on her part to divide the fund. In this case, when appellee in a request for a conclusion of law asked for a division of the fund, this constituted an acquiescence in appellant's offer or election to divide the fund. *In other words, by act of the parties they agreed to divide the property subject to the estate by entirety.* (emphasis added)

Since partition during marriage is a legal determination of an agreed division by the parties of their entireties proper-

ty, each acquires a separate estate which is subject to one of the exceptions to the presumption created by the Divorce code, that all property is presumed to be marital property.

■ Section 401(e)(2) provides:

(e) For purposes of this chapter only "marital property" means all property acquired by either party during the marriage except:

2.) Property excluded by valid agreement of the parties entered into before, during or after marriage.

Partition then, by operation of law, creates the valid agreement to hold the partitioned property separately and not as marital property and brings into operation its exclusion from consideration of equitable distribution under sections 401(d)(8) and 401(e)(2). For this Court to hold, as Judge Wieand suggests, that partitioned property becomes matrimonial property, ignores the clear intent of the law and the reasonable and logical effect of partition, not to mention that the entire exercise of proceeding in partition would be rendered redundant and absolutely in conflict with the allowance of a proceeding in partition as opposed to relying on equitable distribution to determine the division of the marital property. Judge Wieand's analogy of the divided pole misses the point. It is not what the pole was or is after division, it is the nature of its possession by the parties.

The evolution of division of entireties property has been a difficult if not painful one in Pennsylvania law. The genesis of partition of entireties property is derived from the Act of May 10, 1927, P.L. 884, 68 P.S. 501, which permitted partition of entireties property after divorce. Prior to this Act, entireties property retained its character even after divorce. *Alles v. Lyon,* 216 Pa. 604, 66 A. 81 (1907). After the Act of May 10, 1927, partition could be compelled, but if such action was not instituted, the entireties estate continued. *Lazare v. Lazare,* 365 Pa. 591, 76 A.2d 190 (1956).

Section 3 of the Act of 1927 provided, inter alia, "In any case where a husband and wife shall hereafter acquire property as tenants by entireties, and shall be divorced,

the interest of each of the respective tenants by entire-
ties, subsequent to said divorce, shall be conclusively
deemed to be one-half of the value of the property, and,
to accomplish the provisions of this act, the common-law
rule relating to entireties is hereby modified.

The *Lazare* court, interpreting the act strictly in derogation
of the common law, held that it did not permit a destruction
of the entireties property, but simply apportioned one-half
the *value* of the property. In that case, the second wife's
claim, for one-half share after the decease of the husband,
failed as against the first wife since the property vested in
the first wife before partition occurred. By the Amend-
ment Act of May 17, 1949, P.L. 1394, it was provided that
upon divorce, parties holding by the entireties "shall there-
after hold such property as tenants in common of equal
one-half shares in value and either of them may bring suit
in the court of common pleas ... to have the property sold
and the proceeds divided between them (reinacted 1978,
April 28, P.L. 202, No. 53, § 2(a) (1692), effective June 27,
1980, P.P. 68 P.S. § 501. Under this Amendment, the effect
of a partition action is to divide the property into separate
estates and vest one-half share in each as separate proper-
ty.

■ Even if one of the spouses dies before or during the
partition action, the surviving spouse is not entitled to the
entire property as a surviving tenant, but only one-half
share. *Keen by Van Kleef v. Keen,* 315 Pa.Super. 161, 461
A.2d 846 (1983). As to married partners, an offer to parti-
tion (misappropriated property) is accepted by the nonappro-
priating spouse when he or she files suit to partition.
*Simon v. Simon,* 286 Pa.Super. 403, 429 A.2d 1 (1981).
Entireties relationship could always be ended by agreement
of the parties. *Berhalter, supra.*

Thus it can be seen that within the past sixty (60) years in
Pennsylvania, entireties property has evolved from virtually
an indestructible entity that could only be abrogated by
agreement of the parties, before or after divorce, *Lazare,
supra,* modified by legislation to permit partition after

divorce, (Act of 1927) further modified by legislation to become property held in common by operation of law, creating separate property upon partition (amending act of 1949) and finally, by offer (misappropriation) and acceptance (petition in partition) agreeing to terminate the entireties during marriage, permitting division of the estate into one-half shares to each spouse as separate property. *Berhalter, supra.* With this long involved legislative and judicial history to free entireties property at the time of divorce, from the iron bound rigidity of common law doctrine, it is inconceivable that we now should hold, as Judge Wieand would have us, that property resulting from any partition proceeding between spouses is reamalgamated into matrimonial property, which must undergo a second distribution. We are faced with two approaches to this problem. The first is to give value and effect to both partition and equitable distribution, or to have equitable distribution supersede partition. By retaining the validity of both partition and equitable distribution, we cannot adopt Judge Wieand's position which gives equitable distribution a superseding value.

■ In summation, we would hold that where as here, a proper partition was filed in a different division of the same court or in a different county, and that action has not proceeded to judgment prior to action of divorce coupled with a claim for equitable distribution pursuant to section 401(c), such partition action will be stayed by the Divorce Court sua sponte or on motion of either party, enjoining the parties from continuing the partition and directing them to effect a motion for transfer, thereby obtaining jurisdiction over the partition action, which the court of primary jurisdiction (Divorce Court) will hear and determine, in consolidation and conjunction with the equitable distribution, according to the equities of the matter. *Gantz, supra.* In all pre-divorce partitions under a *Vento* claim, when no divorce action is filed prior to judgment, or in a post-divorce partition action pursuant to 68 P.S. § 501, when there has been

no claim for equitable distribution, the practice remains the same.[7]

■ Jurisdiction over the divorce in this case is properly in Allegheny County, according to the statute, and appellant's choice.[8] The partition was proper in Westmoreland County under the venue rule 1552, and because it was not appurtenant to a divorce decree. There was in fact nowhere else to go with it; appellant's complaint had been filed under the Divorce Law of 1927 under which joinder of claims was problematical at best, with no provision for partition, and which did not provide for equitable distribution.[9] The partition having been filed prior to appellee's petition to proceed under the new Divorce Code and amended answer requesting equitable distribution, would properly lie in Westmoreland County and be governed by standard partition practice. Once the divorce decree issued however, partition not having been effected, it became simply a matter of proportionality of the property division, a matter placed within the authority of Allegheny County because of its prior jurisdiction over the divorce and claim for equitable distribution. There was no basis for partition pursuant to section 501, *supra*, as there was no property subject to partition following the divorce, as the order of equitable distribution determined the distribution of all marital (entireties) property. Had there been a basis for a pre-divorce partition due to misappropriation of funds, this would have been factored into the equitable distribution award itself, treating the partitioned amount as separate property. We

7. While the issue is not present in this case, in *Goldstein v. Goldstein*, 354 Pa.Super. 490, 512 A.2d 644 (1986) we would note that we establish some limitations on partition arising from a *Vento* scenario; that is instead of construing the total partition of the marital property, we will require partition of only that property which would thereby work an equitable result.

8. Pa.R.C.P. 1920.2 The action [in divorce], except a claim for custody, may be brought only in the county in which the plaintiff or the defendant resides.

9. The divorce filed by husband on January 1, 1980, was pursuant to the Divorce Code of 1927, as the 1980 Divorce Code did not become effective until July 1980.

further note that while appellant has objected to jurisdiction and allocation of the property, he has not and cannot argue that equitable distribution is per se an inapplicable or improper principle on which to divide the parties' assets. Venue has, in effect, been waived by appellant's combined sins of omission and commission, placing all matters ancillary to the divorce with the court given by appellant's own choice the prerogative of hearing it. *See Gantz, supra; Schulzendorf v. The Pittsburgh and Lake Erie RR Co.,* 340 Pa.Super. 230, 489 A.2d 927 (1985). *See also Estep v. Estep,* 508 Pa. 623, 500 A.2d 418 (1985). (This Court may not consider, sua sponte, matters not properly raised or waived in the court below.)

We now address appellant's claims that the property was improperly treated by the lower court as having been acquired by appellee prior to marriage, and that the property was inequitably divided. We find that we must agree with the former proposition, but not with the latter.

■ Of the property in question, the real estate although in all probability intended by appellee's grandmother to be hers, was placed, at appellee's direction, in the name of both parties during the term of the marriage. This occurence makes it per se marital property (along with much of the personalty). *See* section 401(f) and *see DiFlorido v. DiFlorido,* 459 Pa. 641, 331 A.2d 174 (1975). It does not however, invest in appellant an equal share in or right to the property itself. The trial court awarded to appellant a distributive share equivalent to his financial participation in the property and the marriage. As this court has stated,

> We note that there is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of 401(d) serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions. *The con-*

*cept of equitable distribution is not an equal division of marital property.*

*Semasek v. Semasek,* 331 Pa.Super. 1, 11, 479 A.2d 1047, 1052 (1984) (emphasis added). Also see our discussion on distribution of solely owned property as to increased value in *Anthony v. Anthony,* Pa.Super. (3430 Philadelphia, 1983). (Filed ——/——/——).

With this share, appellant must rest content.

Order affirmed.

WIEAND, J., filed a concurring opinion which was joined by ROWLEY and McEWEN, JJ.

BROSKY, J., files a concurring opinion.

WIEAND, Judge, concurring:

I agree with the majority that the Court of Common Pleas of Allegheny County had jurisdiction to decree equitable distribution of marital property as part of the divorce action pending in that court. I also agree that the divorce court's decree did not constitute an abuse of discretion. Therefore, I agree finally that the order appealed from should be affirmed. With respect to the relationship between the divorce action in Allegheny County and the partition action in Westmoreland County, however, I continue to adhere to the view expressed in my Concurring and Dissenting Opinion in *Goldstein v. Goldstein,* 354 Pa.Super. 490, 512 A.2d 644 (1986).

ROWLEY and McEWEN, JJ., join in the concurring opinion by WIEAND, J.

BROSKY, Judge, concurring:

I concur in the result.

With regard to the relationship between concurrent partition and divorce proceedings, my views have been expressed

in my dissenting opinion in *Goldstein v. Goldstein*, 354 Pa.Super. 490, 512 A.2d 644 (1986). To that dissent, I would add only the following observation.

The majority argues for retention of both actions seeking to allocate property. The partition action will somehow be stayed so that the court has "options." *Vento* style partitions will be stayed and the cases will be consolidated. The court can then either enter a partition order or "issue a divorce decree and allocate property in accordance with the equities of the case." This ignores, of course the onerous three-year separation provision in the Code that can postpone equitable distribution for the full 36 months and beyond. This gives enormous power to the spouse who seeks partition to increase or limit the award, while the other spouse may be compelled to file for or submit to a divorce to stop the partition.

It is clear that nothing can be done to stop a litigant from forcing his or her spouse to file a divorce action in response to a partition (unless the legislature acts to abolish partition), however, the law can fashion a remedy so as to not provide the spouse filing the partition action with the power to defeat equitable distribution when it is to his or her advantage. The majority assumes that since he does not have the facts of the partition allegations before him, it would have been denied. What if that assumption is false?

The majority states the issue before us as follows: "... is partition of entireties property superceded [sic] by a request for equitable distribution under the new Divorce Code?" The majority's answer to this question then follows: "The most definitive answer we can give, as will appear below, is 'not quite.'"[1]

The indefinite nature of this answer will, I am afraid, not provide the guidance that is expected by the family bench and bar.

---

1. "Not quite" is also inconsistent with Goldstein's emphatic "no."