550 A.2d 231

**John CONRADY**

v.

**Elva CONRADY, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 30, 1988.

Filed Oct. 31, 1988.

Craig E. Wynn, Aliquippa, for appellant.

Matthew J. Carl, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and ROWLEY and TAMILIA, JJ.

428

TAMILIA, Judge:

This is an appeal from an Order granting appellee John Conrady's petition for enforcement of settlement agreement.

On April 7, 1977, appellant Elva Conrady filed an accounting action in the Court of Common Pleas of Beaver County against her husband, appellee. In that action, appellant sought an accounting from appellee for one-half the value of various jointly owned savings bonds which appellee had appropriated. Following a trial on the matter, judgment was entered in favor of appellant, on November 1, 1977, in the amount of $2,350.

In September, 1982, appellee filed a complaint in divorce against appellant in the Court of Common Pleas of Allegheny County. Appellant filed an answer in which she raised claims for equitable distribution, alimony, counsel fees and costs. The parties filed affidavits of consent and on October 6, 1983, a divorce Decree was entered which incorporated an earlier property settlement agreement dated September 26, 1983.

In 1987, appellant sought to enforce the Beaver County judgment entered against appellee in November, 1977. In response, appellee filed a petition for enforcement of settlement agreement in which he requested the court order the judgment be marked satisfied based on language in the property settlement agreement. By an Order of court, dated October 1, 1987, the trial court granted appellee's petition by construing the property settlement agreement as a release of the Beaver County judgment. Following the denial of appellant's post-trial motions, the court below entered its October 1, 1987 Order as a final Order of court and final judgment. This timely appeal followed.

Appellant raises two issues on appeal. First, appellant argues the trial court erred in not holding that the judgment entered in her favor and against appellee was intangible personal property which was not subject to the release language of the parties' marriage settlement agreement. Second, appellant claims the trial court erred in not inter-

preting the marriage settlement agreement against the party who prepared it.

In her first argument, appellant asserts the 1977 judgment entered in her favor against appellee acted as a legal division of a portion of the parties' marital property. Appellant claims the verdict awarded her in 1977 converted the marital property, which was the subject of the accounting action, into separate nonmarital property which was not subject to equitable distribution in the subsequent divorce action. Appellant further argues the release of claims language contained in the parties' property settlement agreement did not release appellee from the effectiveness of the judgment against him. We agree with appellant that the Beaver County judgment transferred entireties property into separate property, but we do not agree the property is not subject to equitable distribution under the Divorce Code of 1980, 23 P.S. § 101 *et seq.*, and the provisions of the parties' property settlement agreement.

■ The question presented in this appeal is whether an existing or prior Order partitioning entireties property pursuant to an accounting action, acts to remove the separate property from consideration in fashioning a later equitable distribution award in a subsequent divorce action.

The law in Pennsylvania on the partitioning of entireties property is well settled:

It is a general principle of the law of this Commonwealth that neither spouse may partition entireties property prior to divorce. *Shapiro v. Shapiro*, 424 Pa. 120, 136, 224 A.2d 164, 173 (1966); *Livingston v. Livingston*, 288 Pa.Super. 22, 430 A.2d 1193 (1981). An exception exists where one spouse has wrongfully appropriated entireties property for his or her own use and to the exclusion and detriment of the other spouse. *Shapiro, supra; Stemniski v. Stemniski*, 403 Pa. 38, 169 A.2d 51 (1961); *Berhalter v. Berhalter*, 315 Pa. 225, 173 A. 172 (1934); *Gray v. Gray*, 275 Pa.Super. 131, 418 A.2d 646 (1980); *Vento v. Vento*, 256 Pa.Super. 91, 389 A.2d 615 (1978). Such an appropriation 'works revocation of the

estate by the fiction of appropriation's being an offer of an agreement to destroy the estate and an acceptance of that offer when the spouse starts suit; the property is then fit for accounting and division.' *Stemniski, supra* 403 Pa. at 42, 169 A.2d at 53. The entireties property subject to partition is then divided equally, *Lindenfelser v. Lindenfelser,* 396 Pa. 530, 534–35, 153 A.2d 901, 905 (1959), with each spouse becoming the sole owner of his or her partitioned share of the property. *Stemniski, supra; Fitzpatrick v. Fitzpatrick,* 181 Pa.Super. 581, 124 A.2d 709 (1956).

*Goldstein v. Goldstein,* 354 Pa.Super. 490, 493, 512 A.2d 644, 646 (1986); *see Clingerman v. Sadowski,* 513 Pa. 179, 519 A.2d 378 (1986) (reaffirming the concept that a partition action constitutes an implied agreement to terminate a tenancy by the entireties resulting from a misappropriation of entireties property by one co-tenant).

Since the advent of the equitable distribution provisions of the 1980 Divorce Code, our courts have reconciled the consequences a partition of entireties property has on the dissolution of the marital estate. Most notably, in *Marinello v. Marinello,* 354 Pa.Super. 471, 512 A.2d 635 (1986), and *Goldstein, supra,* we dealt with the procedural connection between an independent partition of entireties property and equitable distribution under the Code.

In *Goldstein,* prior to separation, the husband brought an action to partition entireties property allegedly misappropriated by the wife. The wife brought a subsequent divorce action seeking, *inter alia,* equitable distribution of the marital property. The trial court sustained the wife's objections to the partition action and dismissed it on the grounds that the partition action was superseded by the equitable distribution request of the divorce action. We reversed, holding a pending action in equity to partition property owned by the entireties is not superseded or preempted by a subsequent action in divorce containing a request for equitable distribution of marital property. *Goldstein, supra* 354 Pa.Super. at 498, 512 A.2d at 649.

Similarly, in *Marinello*, the husband filed a complaint in divorce in one county and subsequently brought an action for partition of certain entireties property in a second county. After the filing of the partition action, the parties amended their pleadings, with the wife requesting equitable distribution. Without a final resolution of the partition action being achieved, the first county court granted the divorce and entered a distribution Order, which included the property involved in the partition action, from which the husband appealed. Although we did not reverse the court's distribution Order due to the circumstances presented in the case, we held that when a partition action of entireties property has not proceeded to judgment prior to a divorce action coupled with a claim for equitable distribution, the partition action will be stayed by the divorce court sua sponte or by motion of either party, and transferred to the divorce court for disposition, in consolidation and conjunction with the equitable distribution request, as the equities of the matter require. *Marinello, supra* 354 Pa.Super. at 485, 512 A.2d at 642.

Although the instant case has an existing partition Order and does not involve a question to the procedural effect a partition action has on the jurisdiction of a divorce court, our discussions in *Marinello* and *Goldstein* on the status of entireties property rendered separate through a partition action are directly applicable. Once a *Berhalter–Vento, supra,* partition of entireties property occurs, the separate property held by each spouse loses its designation as entireties property and is no longer "marital property" under 23 P.S. § 401(e). As we explained in *Marinello, supra* at 482, 512 A.2d at 640–41, this does not mean the partitioned property is not considered in equitable distribution under 23 P.S. § 401(d):

Partition creates separate property whether it be prior to the divorce or subsequent to it. Once it is separate property, it is subject to the provisions of 401(d)(8) *'The value of property set apart to each party,'* as one of the considerations in equitable distribution. This is so be-

cause pre-divorce partition is identical in effect to an agreement of the spouses during coverture to dissolve the entireties and to take the divided shares as separate property of each.... Since partition during marriage is a legal determination of an agreed division by the parties of their entireties property, each acquires a separate estate which is subject to one of the exceptions to the presumption created by the Divorce [C]ode, that all property is presumed to be marital property.

Section 401(e)(2) provides:

(e) For purposes of this chapter only 'marital property' means all property acquired by either party during the marriage except:

2.) Property excluded by valid agreement of the parties entered into before, during or after marriage. Partition then, by operation of law, creates the valid agreement to hold the partitioned property separately and not as marital property and brings into operation its exclusion from consideration of equitable distribution under sections 401(d)(8) and 401(e)(2).

(Emphasis in original.) The nature of the partition of entireties property being a legal fiction of offer and acceptance to destroy the entireties estate, *Vento, supra,* removes from the court the ability to consider the property as marital property, limiting its consideration of the separate property to one of the factors under section 401(d).

■ Here, the parties reached a valid property settlement agreement, which was approved by the court and incorporated into the divorce Decree. The parties' settlement agreement provided for mutual release of claims as follows:

## RELEASE OF CLAIMS

(a) Wife does hereby remise, release, quit-claim and forever discharge Husband and the estate of Husband from any and every claim that she now has, may hereafter have or can have at any time, against Husband, or in and to or against his estate, or any part thereof, whether arising out of any former contracts, engagements or

liabilities of Husband, or by way of dower or claim in the nature of dower, widow's right or under the intestate laws, or the right to take against Husband's will, or for support or maintenance, or for any other nature whatsoever, except only any rights accruing to Wife under this Agreement, including any claim for alimony, alimony pendente lite, marital property, counsel fees or expenses, as defined by the Divorce Code.

(b) Husband does hereby remise, release, quit-claim and forever discharge Wife and the estate of Wife from any and every claim that he now has, may hereafter have or can have at any time, against wife, or in and to or against her estate, or any part thereof, whether arising out of any former contracts, engagements or liabilities of Wife, or by way of courtesy or claim in the nature of courtesy, widower's rights or under the intestate laws, or the right to take against Wife's will, or in any other manner whatsoever, except only pursuant to this Agreement, including any claim for alimony, alimony pendente lite, marital property, counsel fees or expenses, as defined by the Divorce Code.

In addition, in a "FULL DISCLOSURE" clause, the agreement states the parties' desire that the agreement finally settle all claims and rights each party possessed which arose "out of their marriage or otherwise":

## FULL DISCLOSURE

Husband and Wife agree that each has made to the other, a full disclosure of the property and assets owned by each of them. Each declares that he or she is not acting under duress, compulsion or mistake, and that he or she desires to make a full and final settlement of all of their respective rights, claims, demands and obligations arising out of their marriage or otherwise pursuant to this Agreement.

"A property settlement agreement between husband and wife will be enforced by the courts in accordance with the same rules of law applying to determining the validity of

contracts generally." *De Witt v. Kaiser,* 335 Pa.Super. 258, 262, 484 A.2d 121, 123 (1984); *Kleintop v. Kleintop,* 291 Pa.Super. 491, 436 A.2d 223 (1981). A contractual release is to be interpreted according to the intent of the parties. *Hertzog v. Jung,* 363 Pa.Super. 439, 526 A.2d 425 (1987). "The intention of the parties to a written release is paramount, and in construing a release, a court should adopt an interpretation which, under all of the circumstances, 'ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished'." *Sparler v. Fireman's Insurance Company of Newark, New Jersey,* 360 Pa.Super. 597, 601, 521 A.2d 433, 435 (1987) (citations omitted); *see In re Estate of Kirk,* 369 Pa.Super. 515, 535 A.2d 669 (1988), and *Buttermore v. Aliquippa Hospital,* 368 Pa.Super. 49, 533 A.2d 481 (1987) (both quoting *Sparler* ). The court determines whether terms of a contract or a release are clear or ambiguous, and the terms are not ambiguous if the court can determine its meaning from the language itself while attributing the language an ordinary meaning under the facts presented. *Vogel v. Berkley,* 354 Pa.Super. 291, 511 A.2d 878 (1986); *see Metzger v. Clifford Realty Corporation,* 327 Pa.Super. 377, 476 A.2d 1 (1984).

We agree with the trial court that the release and full disclosure provisions are unambiguous. As expressed in the preamble to the agreement and stated in the full disclosure provision, the parties intended the property settlement agreement to be a "full and final settlement of all of their respective rights, claims, demands, and obligations *arising out of their marriage or otherwise* " (emphasis added). The objective of a property settlement agreement entered into pursuant to a divorce is to finally settle all claims each party has or may have against the other. As is evident from the ordinary meaning of the release language itself, all such claims were to be laid to rest by the agreement. By signing the agreement as written, appellant released and discharged all claims she had against appellee. We agree that appellee could reasonably expect any claim which appellant wished to maintain against him beyond the agree-

ment should have been raised as required by the full disclosure provision, allowing him to either deal with it or have it excepted from the agreement.

Turning to appellant's remaining claim, we find her argument that the terms of an agreement should be construed against the party preparing it is waived for failure to present it in post-trial motions below. *Ecksel v. Orleans Construction Company*, 360 Pa.Super. 119, 519 A.2d 1021 (1987); Pa.R.C.P. 227.1.

ORDER AFFIRMED.