J-S23022-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
       v.   :
  :
  :
  :
JEFFREY LAMAR AURSBY   :
  :
      Appellant   :   No. 3030 EDA 2024

Appeal from the PCRA Order Entered October 1, 2024
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006650-2018

BEFORE:  STABILE, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:             **FILED JULY 14, 2025**

Jeffrey Lamar Aursby, *pro se*, appeals from the order denying his first
petition for relief pursuant to the Post Conviction Relief Act ("PCRA").[1]  After
careful review, we affirm.

On direct appeal, this Court summarized the factual and procedural
history underlying this appeal:

> On August 4, 2018, around 12:00 p.m., [Lower Merion Township
> Police] Officer Jeff Calabrese [(Officer Calabrese)] and his partner
> were transporting a prisoner when they came upon a [white
> Dodge vehicle] stopped in the middle of the road and causing a
> backup.  Officer Calabrese stopped [their own vehicle] and got out
> to see if the driver needed help.  When he looked inside, he saw
> [Appellant] asleep in the driver's seat; he was the car's only
> occupant.  Officer Calabrese knocked on the window but could not
> wake [the driver].  Officer Calabrese also detected an
> "overwhelming" aroma of fresh marijuana coming from the car.

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

Officer Calabrese walked back and told his partner about what he saw. Because they needed to leave, the partner radioed for more units. Officer Calabrese and his partner then went back and "pounded" on the window [of Appellant's vehicle]. This time, [Appellant] woke up. When he did, Officer Calabrese asked him to turn off the car and hand him his keys. [Appellant] complied.

[Lower Merion Township Police] Officers Michael Young [(Officer Young)] and Alexander Pratt arrived less than ten minutes later to take over the scene. Officer Young tried to speak with [Appellant], but [Appellant] had fallen back asleep. When [Appellant] woke up, he looked at Officer Young with a "blank stare" and did not appear aware of his surroundings, as he continued to fall back asleep. When he would respond, he made "unintelligible mumblings." During this time, Officer Young smelled an aroma of fresh marijuana coming from the car. He also noticed several air fresheners in the interior, some of which were hanging from the ceiling behind the driver's side. There was also a burnt air freshener in the CD player; when asked about it, [Appellant] said that he burnt it to put out more of an aroma like an incense. Finally, Officer Young also smelled the odor of cigars coming from the car.

*Commonwealth v. Aursby*, 260 A.3d 112, 901 EDA 2020 (Pa. Super. 2021)

(unpublished memorandum at 1-2).

Because Officer Young suspected Appellant of being under the influence of a controlled substance, he requested the assistance of Police Officer Eric Fries (Officer Fries), the only available officer certified for Advanced Roadside Impaired Driving Enforcement (ARIDE).

[Officer Fries] arrived around 12:53 p.m., about 40 minutes after Officer Young called for his assistance. As he approached the car, Officer Fries smelled the odor of fresh marijuana coming from the car. Like Officer Young, he noticed the many air fresheners in the car's interior but also that there was a cigar in the center ashtray. After introducing himself, Officer Fries asked [Appellant] to exit the car. After [Appellant] got out, Officer Fries asked him when was the last time that he smoked marijuana; he replied around 1:00 a.m. that morning. He also explained that he worked all

- 2 -

night at a 7-Eleven and that was why he was so tired. [Appellant] then agreed to take the field sobriety tests and walked with Officer Fries to a nearby area to take the tests. At the end of the testing, Officer Fries found no evidence that [Appellant] was impaired.

Officer Fries, however, still wanted to search the car, telling [Appellant] that he could consent to the search or the officers would impound the car and apply for a search warrant. Officer Fries added that if he found only a small amount of marijuana or paraphernalia, he would not criminally charge [Appellant] with anything. [Appellant] consented.

Officer Fries and another officer searched the front of the car first. Officer Fries found marijuana "roaches" inside an ashtray while the other officer found a digital scale in the glove compartment. Officer Fries then checked under the driver's seat and found a plastic bag, at which point [Appellant] said, "y'all not checking the back." Upon hearing this, Officer Fries stopped the search and walked back to [Appellant]. After Officer Fries explained consent searches, [Appellant] told him that he would need to apply for a search warrant. Officer Fries then had the car towed to an impound lot.

*Id.* (unpublished memorandum at 3-4).

This Court described what next transpired:

The next day, Officer Fries searched the car after obtaining a warrant. He first searched the plastic bag under the driver's seat and found a baggie containing a substance appearing to be cocaine. He also found [Appellant's] identification card and several car parts that [Appellant] had said he was delivering for his job. In the rear of the car, Officer Fries found a bag of men's clothes on the floor of the passenger's side rear. After moving the clothes, he opened the floorboard compartment and discovered a loaded Smith & Wesson .22 revolver. [Appellant] was charged with persons not to possess a firearm along with unlawful possession of a controlled substance (cocaine).

*Id.* (unpublished memorandum at 4-5).

Prior to trial,

[Appellant] moved to suppress the firearm and cocaine [seized during the search of his vehicle]. At the suppression hearing, [Appellant] asserted two bases for suppression. First, [Appellant] asserted that the police subjected him to the functional equivalent of an arrest when he was forced to wait over 40 minutes for Officer Fries to perform the field sobriety tests. Because there was no probable cause to arrest at that point, [Appellant] argued that he was unlawfully seized….

Second, [Appellant] asserted that his consent to the warrantless search of the car was involuntary because it was coerced by the police. The Commonwealth countered that [Appellant's] consent was voluntary, but added that the police could search the car under the automobile exception to the warrant requirement adopted in **Commonwealth v. Gary**, … 91 A.3d 102 (Pa. 2014) (plurality). **In** Gary**, a plurality of the Pennsylvania Supreme Court held that police may conduct a warrantless search of a stopped vehicle if they have probable cause to do so, regardless of any exigency beyond the vehicle's inherent mobility.**

After the hearing, the trial court denied [Appellant's] motion to suppress. In its conclusions of law, the trial court rejected [Appellant's] contention that he underwent an arrest, finding instead that his encounter with the police was an investigative detention. In so finding, the trial court noted that the police found [Appellant] passed out in his car in the middle of a busy road; [Appellant] could not stay awake; multiple officers smelled the odor of marijuana; and [Appellant] had several air fresheners. For these reasons, the trial court found, the police had reasonable suspicion that [Appellant] was both driving under the influence and in possession of illegal narcotics. As to [Appellant's] second argument on consent, the trial court did not address the issue, instead finding that the police had probable cause to search [Appellant's] car for contraband.

*Id.* (unpublished memorandum at 5-6) (emphasis added).

Following a trial, a jury convicted Appellant of persons not to possess firearms and possession of a controlled substance. The trial court

subsequently sentenced Appellant to an aggregate 80-160 months in prison. Appellant filed a post-sentence motion, which the trial court denied.

On direct appeal, Appellant challenged, *inter alia*, the denial of his suppression motion, based on (1) the lack of probable cause for his detention; and (2) an unlawful search as officers coerced his consent.[2] **Id.** (unpublished memorandum at 6). This Court rejected Appellant's claims, but observed that

> [w]hile this case was pending on appeal, … our Supreme Court, in **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020), overruled **Gary**, holding that warrantless vehicle searches require both probable cause and exigent circumstances under Article I, Section 8 of the Pennsylvania Constitution….
>
> ….
>
> [Appellant] failed to raise and preserve the issue [based upon the Supreme Court's holding in **Alexander**]. In his Pa.R.A.P. 1925(b) statement, [Appellant] limited his suppression challenge to the Fourth Amendment, asserting only that his "Fourth Amendment rights were violated." Concise Statement, 6/11/2020, at 1. He does the same on appeal, limiting his argument to the Fourth Amendment in asserting that his consent was involuntary. Moreover, [Appellant] did not challenge the trial court's application of the **Gary** automobile exception in his Pa.R.A.P. 1925 statement, nor does he attempt to do so in this appeal. … [B]ecause [Appellant] has not preserved this issue, we cannot apply **Alexander** to this case.

**Id.** (unpublished memorandum at 12, 13-14) (footnote omitted). Thus, we affirmed Appellant's judgment of sentence. **See id.** at 21. On August 9, 2021,

_____

[2] Appellant also challenged the sufficiency of the evidence underlying his convictions.

- 5 -

Appellant filed a petition for allowance of appeal, which Appellant discontinued on September 21, 2021.

Appellant timely filed a *pro se* PCRA petition on October 19, 2021. The PCRA court appointed counsel, who filed an amended PCRA petition on January 25, 2022. The Commonwealth filed an answer and a motion to dismiss Appellant's PCRA petition on February 24, 2022. On August 26, 2022, the PCRA court filed Pa.R.Crim.P. 907 notice of its intention to dismiss Appellant's petition without a hearing. Notice, 8/26/22. Appellant filed a *pro se* response on September 12, 2022, and a counseled response on September 16, 2022.

After various *pro se* filings by Appellant, on June 21, 2024, appointed PCRA counsel, Patrick J. McMenamin, Jr., Esquire (Attorney McMenamin), filed a motion to withdraw and for the appointment of conflicts counsel. Motion to Withdraw, 6/21/24. Attorney McMenamin sought to withdraw based upon his part-time work as an Assistant Public Defender, and Appellant's claim of ineffective assistance by a member of that same office. *Id.* ¶ 11. On July 16, 2024, the PCRA court granted Attorney McMenamin's motion and appointed John F. McCaul, Esquire (Attorney McCaul), as Appellant's counsel. PCRA Court Order, 7/16/24.

On August 8, 2024, Attorney McCaul filed a motion to withdraw from representation and a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 231 (Pa. Super. 1988) (*en banc*). Motion to Withdraw, 9/8/24. On August 29, 2024,

the PCRA court granted Attorney McCaul's motion to withdraw, and again issued Pa.R.Crim.P. 907 notice of its intention to dismiss Appellant's petition without a hearing. There is no *pro se* response in the record. On October 1, 2024, the PCRA court dismissed Appellant's PCRA petition. Appellant timely filed a *pro se* notice appeal. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

In his appellate brief, Appellant presents multiple claims of ineffective assistance of trial counsel. **See** Appellant's Brief at vii (parts 1-2). However, in his Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal, Appellant preserved only the following issues:[3]

[Appellant's] Sixth Amendment Right(s) were violated because

a. Trial Counsel did not challenge the federal automobile exception against the Pennsylvania automobile exception;

b. Trial counsel failed to argue that once the officers did not arrest [Appellant] on the scene, but impounded [his] vehicle for [an] investigative search, a warrant was required [by the Fourth Amendment to the United States Constitution] and [Article] 1, [Section] 8 of the Pennsylvania Constitution;

c. Trial counsel failed [to challenge whether] the officers impounded [Appellant's] vehicle lawfully under policy or statute(s) and the subsequent search[ was] unlawful or lawful[] without a valid warrant[;]

_____

[3] **See** Pa.R.A.P.1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b) s]tatement and/or not raised in accordance with the provisions of [Rule 1925(b)(4)] are waived"); **see also Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) (holding that any appellate issues not raised in a compliant Rule 1925(b) statement will be deemed waived).

d. Trial counsel failed to argue if the officers impounded [Appellant's] vehicle lawfully under policy or statute(s), and [whether] the subsequent search [was] lawful without a valid warrant.

e. Trial counsel failed to argue [that] the officers lacked or had no probable cause for a warrantless vehicle search, due to the enactment of the Medical Marijuana Act[4] (MMA) in Pennsylvania.

Pa.R.A.P. 1925(b) Concise Statement, 10/24/24 (paragraph designations and footnote added, issues renumbered). Accordingly, we address the issues preserved in Appellant's concise statement.

In reviewing an order denying a PCRA petition, our standard of review "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citation and internal quotation marks omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

Appellant's first four issues claim that police officers improperly impounded and searched his vehicle, in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. Appellant's Brief at 14-15. Appellant argues that

_____

[4] 35 P.S. §§ 10231.101 – 10231.2110.

[i]n **Gary**, the [Pennsylvania Supreme C]ourt was abundantly clear in explaining the problems inherent with constitutional provisions in their application to automobiles both under the Fourth Amendment and Article 1, sec. 8. Over the past fifty years, the search of an automobile in the Commonwealth required both "probable cause and exigent circumstances" to conduct a warrantless search[,] contrary to the Fourth Amendment requiring only probable cause, as exigent circumstances are presumed, due to the mobility … of the vehicles on the road. **See Commonwealth v. Casanova**, 748 A.2d 207 (Pa. 2000); **cf. Pennsylvania v. Labron**, 518 U.S. 938 … (1996)[;] … **Gary**, 91 A.3d 102 (Pa. 2014).

….

Although **Gary** was the rule of law governing warrantless automobile searches at the time of Appellant's suppression hearing…[,] that holding was under challenge in the Pennsylvania Supreme Court, as wrongly decided. **See** … **Alexander**, 243 A.3d 177 (Pa. 2020).

**Id.** at 15 (capitalization and spelling modified). According to Appellant, his counsel should have known that the holding in **Gary** was being challenged before the Pennsylvania Supreme Court. **Id.** at 16. Appellant claims this information was available to his direct appeal counsel at the time he filed his notice of appeal. **Id.** at 17.

In order to establish a claim of ineffectiveness, a PCRA petitioner must plead and prove that

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from **Commonwealth v. Pierce**, 527 A.2d 973, 975-76 (Pa. 1987)). … Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally,

because a PCRA petitioner must establish all the ***Pierce*** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

***Commonwealth v. Treiber***, 121 A.3d 435, 445 (Pa. 2015) (citations modified).

In its opinion, the PCRA court addressed these claims and concluded that they lack merit:

> While this matter was on direct appeal, the Pennsylvania Supreme Court decided ***Alexander***[,] which overruled ***Gary*** and held that warrantless vehicle searches require a showing of both probable cause and exigent circumstances. The Superior Court[,] in the instant matter[,] held that [Appellant] had waived the opportunity to avail himself of ***Alexander*** to challenge ***Gary***, due to his failure to raise it [at] any stage of adjudication, including the failure to include it in his concise statement. Although [Appellant's] concise statement and appellate brief pre-dated the decision in ***Alexander***, the Commonwealth's appellate brief was filed after the issuance of the decision and cited ***Alexander***. Despite the Commonwealth's reference to ***Alexander***, [Appellant's] appellate counsel did not file a reply brief asking the Superior Court to consider whether ***Alexander*** was applicable to the instant matter. [Appellant] claims appellate counsel was ineffective due to this omission.
>
> Counsel cannot be ineffective for failing to predict a change in the law. ***Commonwealth v. Gribble***, … 863 A.2d 455, 464 ([Pa.] 2004). For purposes of post-conviction relief, "the adequacy of trial counsel's representation will be assessed based on the law as it existed at the time of the representation." ***Commonwealth v. Fowler***, … 703 A.2d 1027, 1029 (Pa. 1987).
>
> Instantly, throughout almost every stage of adjudication of the instant matter, **including the filing of the concise statement on direct appeal, *Gary*** was the controlling law. Although appellate counsel could have raised an ***Alexander*** claim in a reply appellate brief, the claim still would have been waived considering the basis [of] the Superior Court's finding of waiver was the

- 10 -

absence of a **Gary** challenge in the concise statement. **See Aursby**, **supra** at 13. Thus, raising the issue in any reply brief could not have overcome the lack of any **Gary** challenge in the concise statement. Appellate counsel could not be found ineffective for failing to challenge **Gary** in the concise statement considering such a claim would have required the prediction of a change in the law. **See Gribble**, **supra**.

Additionally, even if appellate counsel had presented a **Gary** challenge in the concise statement, the issue would still be waived due to the doctrine stating that "in order for a new rule of law to apply retroactively to a case pending on direct appeal, the issue had to be preserved at all stages of adjudication up to and including the direct appeal." **Commonwealth v. Tilley**, … 780 A.2d 649, 652 ([Pa.] 2001) (internal quotation marks and citation omitted). Here, trial counsel did not challenge **Gary** at the suppression hearing or at any other time prior to the direct appeal and therefore[,] waived the use of any **Gary** challenge on direct appeal. **See Tilley**, **supra**. Consequently, appellate counsel's failure to raise a **Gary** challenge in the concise statement did not prejudice [Appellant,] considering trial counsel had already waived the issue. Further, as referenced *supra*, trial counsel could not be found ineffective for failing to challenge **Gary** during all of the pre-appeal stages of adjudication[,] considering such a change would have required a prediction of a change in the law. **See Gribble**, **supra**. Thus, there is no arguable merit to this claim and neither appellate nor trial counsel can be found ineffective on these grounds. Accordingly, [Appellant's] … issue[s] merit[] no relief.

PCRA Court Opinion, 1/2/25, at 7-8 (emphasis added, citation omitted). The

PCRA court's findings are supported in the record, and its legal conclusions

are sound.

"[R]eview of counsel's conduct cannot indulge the distorting effects of

hindsight, but instead, counsel's performance must be judged in light of the

circumstances as they would have appeared to counsel at the time."

**Commonwealth v. Hill**, 104 A.3d 1220, 1240 (Pa. 2014) (citation and

internal quotation marks omitted). We will not, in hindsight, fault counsel for failing to anticipate that *Gary* would be overruled, or to craft the same argument that convinced the Supreme Court to overrule it. Accordingly, Appellant's first four issues merit no relief.

In his final preserved issue, Appellant claims that his prior counsel rendered ineffective assistance by failing to challenge the officers' lack of probable cause, based upon the enactment of the MMA. Appellant's Brief at 7. Appellant argues that counsel should have been aware that the mere "smell" of marijuana does not give rise to probable cause, as the MMA legalized medical marijuana in Pennsylvania. *Id.* Appellant contends counsel had no reasonable basis for not raising this issue, and prejudice resulted. *See id.*

Probable cause is established when police have "knowledge of sufficient facts and circumstances, gained through trustworthy information, to warrant a prudent man in the belief that a crime has been committed." *Commonwealth v. Robinson*, 834 A.2d 1160, 1166 (Pa. Super. 2003) (citation omitted). In *Commonwealth v. Barr*, 266 A.3d 25 (Pa. 2021), our Supreme Court recognized that the passage of the MMA "makes abundantly clearly that marijuana no longer is *per se* illegal[.]" *Id.* at 41. Notwithstanding, the *Barr* Court recognized that "the odor of marijuana may be a factor, **but not a stand-alone one**, in evaluating the totality of the

circumstances for purposes of determining whether police had probable cause to conduct a warrantless search." *Id.* (emphasis added).

Instantly, at the suppression hearing, Officer Calabrese testified that while on a prisoner transport, he observed a white Dodge vehicle stopped on Montgomery Avenue in Lower Merion Township. N.T., 4/22/19, at 6. The Dodge was parked in the lane of travel, requiring other vehicles to pull around it. *Id.* at 7. Officer Calabrese stopped his vehicle and approached the white Dodge. *Id.* As Officer Calabrese approached the vehicle, he "smelled an overwhelming aroma of fresh marijuana." *Id.* at 8. At the vehicle, Officer Calabrese observed Appellant in the driver's seat, sleeping. *Id.* Although Officer Calabrese knocked on the window several times, Appellant did not acknowledge the officer. *Id.*

Officer Young testified that when he arrived at the scene, he observed a white Dodge Journey, with a New Jersey license plate, stopped in the westbound lane of Montgomery Avenue. *Id.* at 12. Officer Young observed Appellant asleep in the driver's seat of the vehicle. *Id.* at 13. According to Officer Young,

> I was knocking on the car trying to get [Appellant's] attention. I was speaking to him, saying hello, hey. Eventually, he would wake up[,] open his eyes and look at me in a somewhat of a blank stare. He didn't appear to be aware of his surroundings. Then he would immediately drift off to sleep again. I couldn't keep him awake. I kept trying to engage him in conversation, and he would open his eyes for a brief time and fall asleep again.
>
> There were a couple of times when he would try to respond to me verbally, but it was unintelligible mumblings, things like that. I

- 13 -

couldn't even make out what he was saying and he would fall asleep again.

*Id.* at 14.

Officer Young also detected an odor of fresh marijuana, and observed several air fresheners inside the interior front portion of the Dodge. *Id.* at 15. In addition, Officer Young saw a can of air freshener on the passenger seat. *Id.* Officer Young testified that he noticed "[a]ir fresheners jammed into the CD slot. One was partially burnt." *Id.* Officer Young further observed a distinct odor of cigars emanating from inside the vehicle. *Id.* According to Officer Young, based on his training and experience, the strong odor of cigars often indicate the presence of marijuana. *Id.* at 16. Based upon these observations, Officer Young believed Appellant was under the influence of either marijuana or some other controlled substance. *Id.*

Officer Fries, who is ARIDE certified, testified that upon arriving at the scene, he observed that Appellant was

> completely reclined in his seat, the interior of the vehicle smelled like the odor of fresh marijuana, there w[ere] also several air fresheners in the vehicle, [and] most notably the one I noticed was the one that was jammed in what I initially thought was the air conditioning vent, but it turned out to be the CD player. There was also a cigar that was sitting on top of … an ashtray in the lower center console of the vehicle.

*Id.* at 33. According to Officer Fries, Appellant agreed to take field sobriety tests. *Id.* at 34. Appellant acknowledged smoking marijuana earlier that day. *Id.* While performing a search of the vehicle, to which Appellant consented, Officer Fries found marijuana in the "map pouch, where [Appellant] said it

- 14 -

would be." *Id.* at 35. Officer Fries additionally found the remnants of marijuana roaches in the vehicle's ashtray. *Id.* at 34.

Under the totality of the circumstances, the evidence established probable cause to believe Appellant operated his vehicle while under the influence of controlled substances, and contraband would be found in the vehicle. This evidence included not just the odor of marijuana, but the officers' discovery of Appellant asleep in his vehicle; the discovery of that vehicle stopped in the travel lane of Montgomery Avenue; and the presence of cigars, multiple air fresheners and burnt air fresheners to hide the odor of marijuana. Thus, any challenge to the lack of probable cause to search the vehicle would warrant no relief. Because Appellant's underlying claim lacks arguable merit, his ineffectiveness claim fails. *Treiber*, 121 A.3d at 445. Accordingly, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/14/2025

- 15 -