464 A.2d 1359

**Jacob WOLK**

v.

**Thelma Dym WOLK, Appellant.**

**Jacob WOLK**

v.

**Thelma Dym WOLK, Appellant.**

Superior Court of Pennsylvania.

Argued May 25, 1983.

Filed Aug. 26, 1983.

Petition for Allowance of Appeal Denied Jan. 20, 1984.

312

John J. Dean, Pittsburgh, for appellant.

Frederick N. Frank, Pittsburgh, for appellee.

Before CAVANAUGH, ROWLEY and CIRILLO, JJ.

CIRILLO, Judge:

The parties were married on October 25, 1959 and lived together until a domestic dispute arose in June, 1975. The husband filed a divorce action on September 3, 1980, alleging that the marriage was irretrievably broken,[1] and requesting equitable distribution of marital property as well as counsel fees. The wife filed an Answer and New Matter averring, *inter alia*, that the Divorce Code was constitutionally defective. She also entered a counterclaim for alimony, alimony pendente lite, counsel fees and maintenance of insurance policies.

A hearing was held on March 2, 1981, at which time the court found the marriage to be irretrievably broken. The court did not adjudicate the New Matter or property rights at that time. On March 3, 1981 the wife appealed at No. 333 Pittsburgh, 1981.

Subsequently, the lower court signed a series of Orders, dated March 2, 1981, which stated that the court would not adjudicate the New Matter, would enter a bifurcated divorce and a decree of divorce dissolving the marriage. These orders were then docketed with the prothonotary and on May 15, 1981 the wife appealed at No. 538 Pittsburgh, 1981.

 Initially, we are compelled to address the issue of the propriety of severing economic claims from divorce claims in this matter. The New Divorce Code provides in pertinent part:

[1]. The Act of April 2, 1980, P.L. 63, No. 26, § 201, 23 P.S. § 201(d).

... In the event that the court is unable for any reason to determine and dispose of the matters provided for in this subsection within 30 days after the master's report has been filed, it may enter a decree of divorce or annulment ...

Act of April 2, 1980, P.L. 63, No. 26, § 401, 23 P.S. § 401(b). Similarly, the Pennsylvania Rule of Civil Procedure concerning court hearings in divorce or annulment actions states:

(c) The court need not determine all claims at one time but may enter a decree adjudicating a specific claim or claims.

Pa.R.C.P. 1920.52(c), Adopted June 27, 1980, effective July 1, 1980.

The preceding language demonstrates a legislative awareness that situations could arise in which a single order would not suffice. It is clear, therefore, that the intent of the legislature is to permit bifurcation. However, there is no requirement which mandates bifurcation nor obligates the court to find clear and compelling necessity before it bifurcates a proceeding.

There are several advantages which appertain to the concept of bifurcation. First, it accelerates the actual dissolution of a marriage found to be irretrievably broken since the time needed to obtain a divorce is substantially shorter than the time needed for the disposition of marital property. This allows the parties to quickly begin the task of restructuring their lives. We note that the objectives of the Assembly in enacting the Divorce Code are set forth in Section 102(a) which provides in pertinent part:

(a) The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:

(1) Make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience.

\* \* \* \* \* \*

(3) Give primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs.

(4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage.

Act of April 2, 1980, P.L. 63, No. 26, § 102, 23 P.S. § 102(a)(1), (3) and (4).

It is apparent that a speedy resolution of the divorce issue is within the purview of the Code. Moreover, as the Honorable Eugene B. Strassburger III of the Court of Common Pleas of Allegheny County commented in the case of *Casey v. Casey,* 129 P.L.J. 42, 44 (1981):

... [T]hese goals [of the divorce code] can be accomplished only by the prompt dissolution of a marriage that is demonstrably over (as defined by the code), and allowing the parties to restructure their lives. The goals cannot be accomplished by tying the parties to a dead marriage while all of the conflicts and time-consuming financial details are litigated....

Bifurcation separates the termination of the marriage from the distribution of property so that the marriage and each party's personal life are not held hostage to economic demands. At the same time, the dependent spouse is not economically disadvantaged by the fact of the divorce being issued because support and/or alimony pendente lite are required to continue at their pre-divorce levels pending resolution of the economic matters. *Klein v. Klein,* 16 D & C 3d 651 (1980).[2]

**2.** In *Klein v. Klein, supra,* at 657–58 Judge Wettick reasoned:

Alimony pendent lite, if literally construed, means alimony while the litigation is pending. (citation omitted). Under prior law, the duty to pay alimony pendente lite ended with the divorce because this was the only subject of the litigation. In *Ponthus v. Ponthus,* 70 Pa.Superior Ct. 39 (1918), the court held that alimony pendente lite continued while an appeal from the issuance of a divorce decree is pending. According to this court, the purpose of alimony pendente lite is to permit a dependent spouse to meet the expenses of carrying on or defending an action (including reasonable living expenses), so payments should continue as long as the action is pending. *Also see: Commonwealth ex rel. Entler v. Entler,* 33 Lehigh 23 (1968).

There are also several tax advantages that come into play when considering bifurcation, such as; a spouse may remarry and file a joint federal income tax return with the new spouse; a spouse may avoid filing status as married filing separately; stock redemption attribution rules may be avoided [I.R.C. § 318]; losses on transfers and sales between ex-spouses may be recognized [I.R.C. § 267]; an individual spouse may elect the capital gain exclusion on sale of family residence [I.R.C. § 121]; and gain on the sale of depreciable realty may be taxed as capital gain rather than as ordinary income. [I.R.C. § 1239]. *Rounick, Pennsylvania Matrimonial Practice,* Section 18.3, page 148.

Finally, as revealed by the experience in Allegheny County, bifurcation encourages case settlements between the time the divorce decree is issued and the property distribution issues reach trial. These settlements are an obvious benefit to our inundated courts.

On the other side of the coin, there are many disadvantages related to bifurcation. If the cases are not settled by the parties, then oftentimes two hearings are necessary, thus burdening an already overcrowded court calendar. Also, despite the fact that divorce is achieved rapidly, there is still a significant delay in the resolution of economic issues, thus having a dilatory effect on the parties' efforts to reshape their lives. From a tax standpoint, bifurcation prevents the parties from filing a joint federal income tax return and therefore a favorable tax rate is unavailable.

Another problem which arises where a case has been bifurcated involves the impact that the death of one of the parties, subsequent to the issuance of the divorce decree but prior to a determination of the economic issues, has on the surviving spouse's right to equitable distribution. This issue was painstakingly analyzed in an article authored by

> Thus so long as any claims raised in the divorce litigation are still pending, the principles enunciated in *Ponthus* bar automatic termination of alimony pendente lite.

the Honorable Lawrence W. Kaplan.[3] Judge Kaplan noted that where a case has been bifurcated and one party dies before there has been a resolution of the ancillary issues, the other spouse is precluded from enjoying the benefits provided under the Probate, Estates and Fiduciaries Code.[4] Furthermore, the death of one of the parties would have an adverse effect on the surviving party's equitable distribution claim. Though this spouse would still have a claim against the decedent's estate under the Divorce Code's equitable distribution process, that claim would be seriously hampered by the surviving spouse being rendered incompetent as a witness by the Dead Man's Rule.[5]

Still another issue which could arise relates to the effect that a bifurcated divorce has on a divorced spouse's right to receive the proceeds of a life insurance policy in which that spouse was named a beneficiary. In *Simpkins v. Dodolak,* 1 Pa.Fiduc.2d 120 (1980), a Clearfield County case, the court held that since the husband had retained the right to change his beneficiary at any time, then under the Act of April 18, 1978, P.L. 42, No. 23, Sec. 8, 20 Pa.C.S.A. § 6111.1, the rights of the wife were revoked regarding the proceeds of the policy in question. Undoubtedly, to this list of detriments associated with bifurcation, numerous other possibilities can be added.

In light of the antecedent discussion, it is obvious that the decision to bifurcate, though permissible, should not be made *pro forma,* as in the case of *Klein v. Klein, supra.* Rather, such a determination should be made only after the disadvantages and the advantages have been carefully explored and analyzed. Each case must be reviewed on its own facts and only following the court's

3. Kaplan, "The impact of death on a pending divorce," *Pennsylvania Law Journal—Reporter,* January 18, 1982, at 3 and 24.

4. Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S.A. § 101 *et seq.*

5. Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended by* the Act of April 28, 1978, P.L. 202, No. 53 § 10(75), 42 Pa.C.S.A. § 5930.

determination that the consequences of bifurcating the case will be of greater benefit than not bifurcating, should it grant the petition. In so holding, we reject the rationale of *Smolinsky v. Smolinsky,* 5 Phila. 364 (1981), whereby the trial court required compelling reasons to be shown before granting a petition to bifurcate. Such a strict test is not demanded by the legislature. The eventual decision should be the approach which is fair to both parties.

■ Since the decision to bifurcate is discretionary, we will review lower court decisions pertaining to bifurcation by using an abuse of discretion standard. So long as the trial judge assembles adequate information, thoughtfully studies this information, and then explains his decision regarding bifurcation, we defer to his discretion. In other words, this determination should be the result of a reflective examination of the individual facts of each case.

This scope of review is consistent with other Superior Court decisions which deal with the Divorce Code. *See: Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983); *Gee v. Gee,* 314 Pa.Super. 31, 460 A.2d 358 (1983) (in determining the propriety of property distribution, the Superior Court uses an abuse of discretion standard of review); *See also: Geyer v. Geyer,* 310 Pa.Super. 456, 456 A.2d 1025 (1983) (abuse of discretion standard is appropriate when reviewing awards of alimony); *See also: Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983) (orders for alimony pendente lite, counsel fees and permanent alimony should be reviewed for an abuse of discretion by the lower court). Likewise, our position in this matter, of requiring the trial judge to articulate reasons for his decision and then reviewing this determination for an abuse of discretion, is analogous to the procedure used under the Sentencing Code.[6] *See: Commonwealth v. Wilson,* 306 Pa.Super.

6. Act of December 30, 1974, P.L. 1052, No. 345, § 1, *as amended by* the Act of October 5, 1980, P.L. 693, No. 142, § 401(a), 42 Pa.C.S.A. § 9701 *et seq.*

372, 452 A.2d 772 (1982); *Commonwealth v. Rooney*, 296 Pa.Super. 288, 442 A.2d 773 (1982).

The wife in this instance has the burden of proving that the trial judge abused his discretion. In defining this standard, the courts of this Commonwealth have articulated the following:

> ... When the court has come to a conclusion by the exercise of its discretion, the party complaining of it on appeal has a heavy burden; it is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." (Citation omitted).

*Garrett's Estate*, 335 Pa. 287, 292–93, 6 A.2d 858, 860 (1939); *See also: Mackarus Estate*, 431 Pa. 585, 246 A.2d 661 (1968); *Campbell v. Heilman Homes, Inc.*, 233 Pa.Super 366, 371, 335 A.2d 371, 373 (1975) (HOFFMAN, J., dissenting).

In the case at bar, the lower court failed to exercise its discretionary powers. Its decision to bifurcate was based upon an accepted practice in Allegheny County, not upon the particular facts of this case. Therefore, we must reverse the Orders and Decree of Divorce entered by the trial court on March 2, 1981 and remand for a hearing in accordance with this opinion. Because of this decision, we need not address the other contentions in appellant's brief. Jurisdiction is relinquished.

Reverse and Remand.