482 A.2d 974
**L. David HALL, M.D. and Sharon McGonigal, Executors of the Estate of Fred L. Hall, Deceased**

v.

**Martha HALL, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 23, 1984.

Filed Sept. 7, 1984.

Reargument Denied Nov. 9, 1984.

Reargument Denied Feb. 14, 1985.

484

Alida O'Hara, Honesdale, for appellant.

Joseph Wright, Jr., Scranton, for appellee.

Before WICKERSHAM, MONTEMURO and MONTGOMERY, JJ.

MONTEMURO, Judge:

This is an appeal from an order entered by the Honorable Robert J. Conway, President Judge of the Court of Common Pleas of Wayne County, granting a decree in divorce.[1]

The parties to this case were married in 1952, and lived together until 1974. The husband, Fred L. Hall, commenced the present action by filing a complaint for divorce in which he alleged that the marriage was irretrievably broken. Although the complaint was originally filed in Centre County, appellant/wife, Martha Hall, filed preliminary objections requesting, *inter alia,* a change of venue to Wayne County. The preliminary objections were sustained. Subsequently, appellant/wife filed an answer and counterclaim averring indignities, and asking for alimony, alimony *pendente lite,* and equitable distribution.

Various pleadings were then filed by each of the parties, the most central of which were a motion for recusal filed by appellant, and a motion for bifurcation filed by Fred L. Hall. A hearing was held on both of these matters on April 14, 1982. On that same day, the trial judge issued orders denying the motion for recusal, and granting an immediate divorce, but retaining jurisdiction over the economic claims raised by appellant. Exceptions were then filed, and denied by order of court on June 1, 1982. This appeal followed; consequently, all proceedings in regard to economic matters in the lower court were stayed.[2] On January 28, 1984,

1. 23 P.S. § 201(d).

2. There appears to be some confusion concerning which order was appealed. The lower court entered two orders on April 14, 1982. Timely exceptions were filed to both of these orders, and denied by a single order on June 1, 1982. The notice of appeal, which was not filed until June 15, 1982, states that the appeal is from the order of April 14; but, appellant's brief sets forth the text of the order of June 1 as the order or determination in question. (See Pa.R.A.P. 2115).

while this case was pending on appeal, Fred L. Hall, the appellee, died. By order of June 13, 1984, the executors of his estate, Sharon McGonigal and L. David Hall, were substituted as parties in the case.

 Initially, we must deal with the question of whether the lower court erred in refusing to recuse itself. A party who asserts that a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal. *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983); *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976). Appellant certainly did not meet that burden here. In her motion for recusal she alleged two possible bases for disqualification, only one of which is raised on appeal. It concerns an *ex parte* communication which appellant alleged was in violation of Canon 3(A)(4) of the Code of Judicial Conduct. Specifically, the subsection states:

> (4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, must not consider ex parte communications concerning a pending proceeding.

From the little that was brought out at the April 14 hearing, it seems that the *"ex parte"* communication appellant refers to is a telephone conversation in which the court informed appellee's attorney when certain Income and Expense Statements had to be filed, and when the hearing on alimony *pendente lite* would take place. This information or directive was subsequently or simultaneously made subject to court order. Obviously, this is not the type of communication contemplated in the subsection quoted above. It defies logic to suggest that the aim of the provision is to prohibit a judge from considering a communication which he himself makes to another person. Finding

Appellee also treats this as an appeal from the order of June 1, 1982. (See appellee's answer to motion for stay of hearing). We regard the properly appealable order, that of June 1, 1982, as the order from which this appeal was taken.

no abuse of discretion, we hold that the recusal motion was properly denied. *Commonwealth v. Kane,* 199 Pa.Super. 89, 184 A.2d 405 (1962).

We now turn to the question of the divorce.

What the lower court did, and appellant says this was error, was to sever the economic claims from the divorce claim. However, we find this to be in keeping with 23 P.S. § 401(b) which provides:

(b) *Any decree granting a divorce or an annulment, shall include after a full hearing, where these matters are raised in the complaint, the answer or other petition, an order or orders determining and disposing of existing property rights and interests between the parties,* custody and visitation rights, child support, alimony and any other related matters including the enforcement of separation agreements voluntarily entered into between the parties. In the enforcement of the rights of any party to any such matters, the court shall have all necessary powers, including but not limited to, the power of contempt and the power to attach wages. *In the event that the court is unable for any reason to determine and dispose of the matters provided for in this subsection within 30 days after the master's report has been filed, it may enter a decree of divorce or annulment.* The court may order alimony, reasonable counsel fees and expenses pending final disposition of the matters provided for in this subsection and upon final disposition, the court may award costs to the party in whose favor the order or decree shall be entered, or may order that each party shall pay his or her own costs, or may order that costs be divided equitably as it shall appear just and reasonable. (Emphasis added)

Similarly, Pa.R.C.P. 1920.52(c) states that:

(c) The court need not determine all claims at one time but may enter a decree adjudicating a specific claim or claims.

Appellant raises two issues regarding the lower court's order granting the divorce. Essentially, these two issues

may be stated as one question—did the court err in bifurcating the proceedings?

Standards for bifurcation were recently set forth in the case of *Wolk v. Wolk,* 318 Pa.Super. 311, 317–318, 464 A.2d 1359, 1362 (1983). Therein, this court stated:

> [T]he decision to bifurcate, though permissible, should not be made *pro forma,* as in the case of *Klein v. Klein,* [16 Pa.D&C 3d 651 (1980)]. Rather, such a determination should be made only after the disadvantages and the advantages have been carefully explored and analyzed. Each case must be reviewed on its own facts and only following the court's determination that the consequences of bifurcating the case will be of greater benefit than not bifurcating, should it grant the petition.

It went on to note:

> Since the decision to bifurcate is discretionary, we will review lower court decisions pertaining to bifurcation by using an abuse of discretion standard. So long as the trial judge assembles adequate information, thoughtfully studies this information, and then explains his decision regarding bifurcation, we defer to his discretion. In other words, this determination should be the result of a reflective examination of the individual facts of each case. *Id.*

We now turn to an examination of the record in an effort to determine whether the court in this instance complied with the standards enunciated in *Wolk v. Wolk, supra.*

As was stated earlier, the matter of bifurcation was considered by the lower court at the April 14, 1982, hearing. Out of a twenty-one page transcript of that hearing, only five pages contain testimony concerning the matter of bifurcation. (R. 113a–118a). Much of this testimony consists of discussion among the court and the parties' attorneys on what the concept of bifurcation involves. Relatively little discussion is devoted to an examination of the potential consequences of bifurcation on these particular facts.

The hearing was abruptly ended by the trial judge who ordered from the bench that a divorce decree be entered. (R. 118a). This after stating, "I didn't have to have a hearing on this motion for bifurcation ... I simply could have gone in the office and signed the decree." (R. 117a).

■ The lower court did issue an opinion in this matter. Unfortunately, it is not terribly illuminating. Only one paragraph is devoted to an explanation of reasons for the decision to bifurcate. The relevant excerpt is set forth below:

> It is this Court's Opinion, in the interest of justice, and of the parties involved and taking all factors into consideration [sic], bifurcation will bring unnecessary procrastination to a minimum in this particular case. The fact that the marriage is irretrievably broken, and the parties have lived separate, and apart, for a period in excess of three (3) years is specifically admitted by defendant. Also, the history of litigation, involving these parties, gives good cause to believe that the matters of alimony and equitable division, will not be quickly nor easily resolved, in this particular case.

(Brief of Appellant at 23). While we recognize that the last sentence of the paragraph does give some account of the trial judge's decision, it is basically a conclusion. Without elaboration, we are unable to ascertain whether the "disadvantages and the advantages [of bifurcation] have been carefully explored and analyzed." *Wolk v. Wolk, supra,* 318 Pa.Super. at 317, 464 A.2d at 1362. In sum then, although we realize that the decision to bifurcate is discretionary, we are not convinced that in the case *sub judice* we have been presented with a record wherein, "the trial judge assembles adequate information, thoughtfully studies this information, and then explains his decision regarding bifurcation ..." *Id.*

Appellee attempts to counter all of this by arguing that the lower court did in fact gather adequate information, and that it would have issued a decision on all of the economic

claims but for the fact that appellant filed the instant appeal.

As to the adequacy of information, appellee points out that immediately following the April 14, 1982, hearing on the recusal motion and the motion to bifurcate, the court commenced taking testimony on economic matters. More testimony was taken on May 10, 1982 and May 11, 1982.

Initially, we note that there is some dispute between the parties as to the substance of this testimony. Appellee's counsel seems to suggest that he indicated a desire that the testimony encompass equitable distribution, while appellant asserts that the sole subject was alimony *pendente lite.* We are unable to resolve this dispute because the transcripts of these hearings are not included in the record. However, it matters little since all of this occurred subsequent to the court's decision to bifurcate. Obviously, what was contemplated in *Wolk,* and contrary to the suggestion offered by appellee, was that this information be gathered, and thoughtfully studied, *before* a decision on bifurcation is made; not merely before exceptions are decided or before an appeal is taken.

In a somewhat related vein, appellee asserts that the lower court, as evidenced by the hearings of April 14, May 10, and May 11, 1982, was moving toward a resolution of the economic issues, and would have rendered a decision on them if the appellant had not filed an appeal. Consequently, appellee reasons that any delay in the resolution of economic matters has been occasioned by the appellant's actions. Instead, appellee suggests that appellant should have waited until all of the economic claims had been decided, and then should have appealed from all orders at the same time.

Appellee's reasoning in this regard is flawed. An order entering a bifurcated divorce is final and appealable. *See Thill v. Larner,* 321 Pa.Super. 62, 467 A.2d 894 (1983); *Wolk v. Wolk, supra.* If appellant were to wait until all economic claims were resolved, she would risk losing her

right to appeal the bifurcation. The vagaries of court calendars being what they are, there certainly was no guarantee that all economic claims would be resolved prior to expiration of the thirty (30) day appeal period.

Having refuted appellee's arguments, we now turn to the question of how we shall ultimately dispose of the case. In *Wolk v. Wolk, supra,* upon finding that the lower court failed to exercise its discretionary powers, the case was reversed and remanded.

It is in view of this potential disposition that the implications of the death of Fred L. Hall must be examined.

■ The normal consequence of an appeal is to suspend the effect of a divorce decree. As was stated by this court in *Shuda v. Shuda,* 283 Pa.Super. 253, 258, 423 A.2d 1242, 1244 (1980), "If the decree is set aside, the parties are still married; in retrospect, their marriage was never interrupted."

■ What must be considered in conjunction with this principle regarding appeals, is the general rule that divorce proceedings pending at the death of either party are abated thereby, and the personal representatives of the deceased cannot be substituted. *Matuszek v. Matuszek,* 160 Pa.Super. 526, 52 A.2d 381 (1947); *Upperman v. Upperman,* 119 Pa.Super. 341, 181 A. 252 (1935); *Chappell v. Chappell,* 21 Pa. D.&C. 3d 44 (1981). However, there is an exception to this general rule which permits preservation of the action for purposes of appellate review, so long as the appeal has been perfected prior to death. *Rhinehart v. Rhinehart,* 197 Pa.Super. 558, 180 A.2d 82 (1962); *Henszey v. Henszey,* 195 Pa.Super. 377, 171 A.2d 837 (1961). It is on the authority of these cases that we have allowed substitution here.

Taken together, these two propositions dictate that it would be meaningless to remand in this instance.

■ To illustrate this point, let us suppose that we were to remand. Let us assume further that the lower court reviewed the matter in accordance with the requirements of *Wolk,* and determined that bifurcation was indeed proper.

What then would the trial judge be able to do? The previous order granting the divorce would have been reversed by this court and a new order granting a divorce to a deceased or substituted party could not be entered. Conversely, let us assume that on remand the trial judge decided that the case should not be bifurcated. If the economic matters could somehow be considered, the court would still be faced with the impermissible eventuality of having to grant a divorce to a deceased or substituted party. Therefore, as a consequence of this reasoning, we decline to engage the lower court in the futility of a remand.

Order reversed.