## Miller v. Miller

*Susan Peikes Gantman,* for plaintiff.
*Lynne Z. Gold-Bikin,* for defendant.

DAVENPORT, *J.*, December 2, 1988 —

### HISTORY

Barry Miller and Francine Judith Miller were married on August 22, 1965. On November 15, 1985, husband filed for a divorce, alleging that the

marriage was irretrievably broken and requesting equitable distribution of the marital property. At a hearing held before the undersigned on September 8, 1988, the court considered several petitions including wife's petition for contempt and husband's petitions for modification of a support order, special relief, and a bifurcated divorce. Husband's petition to modify was withdrawn, the contempt matter was settled and the petition for special relief was continued. At the hearing, the court advised the parties that it would take the petition for bifurcation under advisement and review the file before entering an order. Both counsel agreed to this without objection.* Later that same day, after reviewing the file and wife's objections, the court granted husband's petition for bifurcation and entered a divorce decree. Wife now appeals that decision.

## DISCUSSION

The Divorce Code of April 2, 1980, P.L. 63, 23 P.S. §401(b), as amended by Act no. 1988-13, February 12, 1988, provides for bifurcation as follows:

"[I]n the event that the court is unable for any reason to determine and dispose of the matter provided for in this subsection within 30 days after the master's report has been filed, it may enter a decree of divorce or annulment."

The seminal case on the trial court's authority to grant bifurcation is *Wolk v. Wolk*, 318 Pa. Super. 311, 464 A.2d 1359, (1983) wherein the court stated:

---

*Wife argues in her 1925(b) concise statement of matters complained of on appeal that the parties "appeared before the court on September 8, 1988, for the limited issue of defendant's petition for special relief." A review of the transcript clearly indicates that this is not so, and that the purpose of the September 8 hearing was to consider several petitions.

64

"[T]he decision to bifurcate . . . should be made only after the disadvantages and the advantages have been carefully explored and analyzed. Each case must be reviewed on its own facts and only following the court's determination that the consequences of bifurcating the case will be of greater benefit than not bifurcating, should it grant the petition." 318 Pa. Super. at 317-8, 464 A.2d at 1362.

Since the decision to bifurcate is discretionary, the court sets forth the following reasons for its decision. The parties have lived separate and apart over three years and the marriage is irretrievably broken. Wife is not contesting husband's request for a divorce and there is no reason to delay entry of the decrees except wife's position concerning equitable distribution. The entry of a divorce decree will not alter wife's right to alimony pendente lite or counsel fees. *Pastuszek v. Pastuszek*, 346 Pa. Super. 416, 499 A.2d 1069 (1985), or to a support or alimony award. *McNulty v. McNulty*, 503 Pa. Super. 440, 500 A.2d 876 (1985). Nor will wife's economic interests be jeopardized by a bifurcated proceeding. Wife currently resides in the marital residence and all of the marital assets are within her control pending resolution of the economic issues. Wife has an enforceable support order in place, and if husband fails to make the required payments wife retains the remedy of contempt which is unrelated to the bifurcation issue. *Taylor v. Taylor*, 349 Pa. Super. 423, 503 A.2d 439 (1986). If a significant change in circumstances occurs, either party may petition for a modified support order. *Id.*; 23 P.S. §501(e).

Wife, however, opposes bifurcation and argues that husband suffered a heart attack three years ago severely prejudicing wife should husband die before equitable distribution of the parties' assets. In *Taylor v. Taylor, supra*, the appellate court refused

to deny bifurcation despite wife's argument that she would be disadvantaged if her husband died prior to equitable distribution. In *Taylor* the court noted that a former spouse's interest in marital property will not be altered by her husband's untimely death. In *Pastuszek, supra,* the court specifically held that pending ancillary matters, following a divorce decree, survive the death of one of the parties:

"Once the [divorce] decree has been entered, the right of the spouse to the distribution of marital property and other economic claims where these matters have been properly put in issue before the death of the spouse, is vested. We do not perceive any conflict between this rule and the provisions of any statute dealing with the estates of decedents. By virtue of equitable distribution of marital property and the disposition of other economic claims, some property may become an asset of the decedent's estate and shall be treated by the personal representative as any other estate asset." 346 Pa. Super. at 426, 499 A.2d at 1074.

Bifurcation is advantageous in this case in that it will accelerate the dissolution of this irreconcilable marriage and allow the parties to begin the task of restructuring their lives. *Wolk* at 313, 464 A.2d at 1360. The parties' personal lives should not be held hostage to economic disputes. *Taylor* at 427, 503 A.2d at 443. Wife has failed to provide the court with evidence of the specific disadvantages to him/herself which bifurcation would cause. *Id.* at 429, 503 A.2d at 442. Since bifurcation of divorce furthers the goals of the Divorce Code, husband's request for a bifurcated divorce was properly granted and finally it should be noted that this appeal itself delays the equitable distribution, hence leading the court to believe that defendant has an ulterior motive which is unstated.