## Bilger v. Bilger

*Arthur Lefkoe,* for plaintiff.
*John D. Conroy,* for defendant.

YOHN, *J.,* December 12, 1990—Marilyn P.G. Bilger filed a complaint in divorce on November 16, 1980. James D. Bilger petitions the court to bifurcate the divorce claim from the remaining unresolved economic claims in the case. On June 8, 1990, the court granted defendant's petition and ordered bifurcation. Plaintiff filed exceptions to this order which the court dismissed on August 16, 1990. Pursuant to the bifurcation, the court entered a decree granting the divorce on September 10, 1990. Plaintiff appealed, arguing that the court improperly granted bifurcation of the claims and therefore erred in entering the final divorce decree.[1]

Plaintiff and defendant were married on August 16, 1975. Ironically, although it was plaintiff who initiated divorce proceedings four years later, the 11-year history of this case is a saga of plaintiff's resistance both to resolving the underlying economic issues and to the entry of a final divorce decree. Plaintiff filed her affidavit of consent in

---

1. Plaintiff initially appealed the court's order granting bifurcation. The Superior Court denied plaintiff's petition for permission to appeal because bifurcation is an interlocutory matter. While the bifurcation order is not a final, appealable order, it is appropriate to raise the issue of bifurcation on appeal from the divorce decree itself. *Mosier v. Mosier,* 359 Pa. Super. 187, 518 A.2d 843 (1986).

March 1982, acknowledging that the marriage was irretrievably broken and agreeing to the entry of a final divorce. The Honorable Richard S. Lowe entered an order on November 3, 1982, appointing a master to resolve the economic claims and deferring entry of the final decree until the claims were resolved. Since the master in equitable distribution scheduled the first hearing in March 1983, either plaintiff herself or through counsel has requested at least six continuances.[2] Six years after Judge Lowe's order appointing a master, the equitable distribution hearing had not yet occurred. Therefore, in November 1988, defendant petitioned the court for bifurcation of the divorce and economic claims.

The court held a hearing on this petition and several related petitions on April 28, 1989.[3] At this time plaintiff, who was represented by counsel, entered into an agreement with defendant which provided in relevant part:

"*Mr. Lefkoe:* It is my understanding further, that the court will order a listing of a hearing before the master in equitable distribution to be held within 90 days from today's date for which there is to be no continuance. It is further my understanding that we have agreed that if this matter is not resolved finally

---

2. Plaintiff requested most of these continuances due to counsel changes. Since plaintiff filed for divorce, she has changed counsel four times and within two separate intervals has appeared pro se. Plaintiff's exhibit 1, received into evidence at the bifurcation hearing on April 17, 1990, chronicles these counsel changes and requests for continuances.

3. Another principle part of the agreement reached at this hearing concerned the sole marital asset of the parties, a farm owned by defendant prior to the marriage. The parties agreed to execute an agreement of sale for the property. Since that time, the farm has been sold and defendant and plaintiff have each received $50,000 from the sale. The balance of the proceeds are being held in escrow pending equitable distribution.

within six months from this date, that the court will issue an order bifurcating the divorce action." (N.T., April 28, 1989, at 5.)

Plaintiff stated, on the record, that she understood and assented to the agreement stated by counsel and consented to its being entered as a court order. (N.T., April 28, 1989, at 9-10.) Within the same week, however, plaintiff dismissed the attorney who had represented her at this hearing. Through new counsel, plaintiff requested a continuance of the equitable distribution hearing scheduled 90 days later, to which she had agreed there would be no continuance.

In November 1989, because six months had elapsed since the court entered its order pursuant to this agreement and the equitable distribution hearing had still not taken place, defendant petitioned the court for bifurcation of the claims according to the terms of the agreement. The court held a hearing on the bifurcation issue on April 17, 1990. Both sides were represented by counsel and presented evidence. On June 8, 1990, the court entered an order granting defendant's petition for bifurcation. Plaintiff filed exceptions to this order which the court dismissed on August 16, 1990.[4] The court entered the final decree in divorce on September 10, 1990.

## DISCUSSION

On appeal, plaintiff apparently attacks the underlying decision to bifurcate the claims which formed the basis for the subsequent entry of the divorce

---

4. Plaintiff filed additional "exceptions" to the August 16, 1990 order dismissing the original exceptions. Because these "exceptions" did not raise any new issues not previously considered, the court also dismissed these exceptions by order dated August 24, 1990.

decree. Although plaintiff filed two sets of exceptions to the bifurcation order, she did not file either exceptions or post-trial motions after the court entered the divorce decree. In order to preserve issues for appellate review, plaintiff must file post-trial motions:

"Where, as here, an order of bifurcation is opposed prior to the entrance of the divorce decree, opposition must be expressed in some fashion at the time the court granted bifurcation, and then, after the entrance of the divorce decree, post-trial motions must be filed pursuant to Pa.R.C.P. 227.1 stating how the grounds were asserted in the earlier proceeding. . .

"Because appellant has failed to file motions in accordance with Rules of Civil Procedure, 227.1 to 227.4 inclusive, following the issuance of the divorce decree, she has not preserved any issues for review." *Mosier v. Mosier,* 359 Pa. Super. 187, 195-6, 518 A.2d 843, 847 (1986).

However, even though plaintiff waived her right to raise any issues on appeal, there is no merit to her assertion that the court erred in granting the order to bifurcate.

The Pennsylvania Divorce Code permits the severance or bifurcation of economic claims from divorce claims. 23 P.S. §401(b). "Bifurcation separates the termination of the marriage from the distribution of property so that the marriage and each party's personal life are not held hostage to economic demands." *Wolk v. Wolk,* 318 Pa. Super. 311, 315, 464 A.2d 1359, 1361 (1983). The court need not find compelling reasons before making a decision to bifurcate. *Id.* However, this decision should be an individualized rather than a pro forma determination:

"Each case must be reviewed on its own facts and only following the court's determination that the consequences of bifurcating the case will be of greater benefit than not bifurcating, should it grant the petition. . .

"Since the decision to bifurcate is discretionary, we will review lower court decisions pertaining to bifurcation by using an abuse of discretion standard. So long as the trial judge assembles adequate information, thoughtfully studies the information and then explains his decision regarding bifurcation, we defer to his discretion." *Id.*

The court conducted a full hearing on the sole issue of the petition to bifurcate on April 17, 1990. The evidence presented revealed that the parties had been married for four years and separated for 11. Both sides agreed that the marriage was irretrievably broken. Since 1987, defendant has been living with another woman whom he intends to marry. Plaintiff not only initiated the divorce but filed an affidavit of consent to divorce eight years ago. The parties have been awaiting a hearing in equitable distribution since that time. The delay in hearing was largely attributable to plaintiff. The sole marital asset is now sold and the funds are in escrow awaiting distribution.

Plaintiff opposed bifurcation because her medical benefits through defendant's former employer would terminate upon divorce. In addition, the social security benefits which plaintiff received as the wife of a social security recipient would also end when the divorce was final.

Weighing all the factors, the court determined that the advantages far outweighed the possible disadvantages. Although termination of medical benefits would be seriously detrimental to plaintiff, this matter could be resolved through alimony pendente

lite, alimony and the wife's obtaining continued coverage from another carrier. Divorce does not alter the right of a former spouse to a support or alimony award. *Pastuszek v. Pastuszek,* 346 Pa. Super. 416, 426, 499 A.2d 1069, 1074 (1985). In this regard, the court also found that plaintiff had not made a good-faith effort to secure alternate coverage. The court in *Taylor v. Taylor,* 349 Pa. Super. 423, 428, 503 A.2d 439, 442 (1986), found that the loss of medical benefits, even when plaintiff had a current medical problem, was not so overwhelming a disadvantage as to outweigh the advantages of bifurcation:

"While we may be sympathetic to appellant's plight, the disadvantages that she has alleged are not so overwhelming or of such magnitude that we are compelled to reverse the discretionary decision of the trial court. Appellant has an enforceable support order in place. If appellee is not making the required payments, as alleged, appellant has a remedy which is unrelated to the bifurcation issue. If a significant change in circumstances occurs, such as the loss of medical benefits, appellant can petition for a modified support order."

In the present case, plaintiff has an enforceable support order and also the option to petition for modification. As far as the loss of social security benefits were concerned, the court found that this loss was counterbalanced by the fact that the parties had only lived together for four years prior to their separation.

There was no question that this marriage was irretrievably broken and divorce was certain. As is often the case, there were unfortunate but unavoidable consequences to the dissolution of this marriage. Plaintiff was destined to lose both the medical and social security benefits after equitable distribu-

tion resolved the economic claims. Resistance to bifurcation at this point in time was merely an attempt to postpone the inevitable.

The court assembled sufficient information in this case, carefully weighed its decision and fully explained its reasons for granting the petition. (See orders of June 8, 1990 and August 16, 1990.) These parties had appeared before this same court on several occasions and the circumstances surrounding this case were well-known to the court. In fact, this court had previously heard argument on the bifurcation issue on December 12, 1989 but agreed to postpone making a decision hoping that an equitable distribution conference scheduled for January 1990 would resolve the issue. However, the parties appeared before the court in April 1990 with the economic claims still unresolved. The decision to bifurcate was an informed, reasoned and deliberate decision, not a pro forma determination.

The court did not abuse its discretion in bifurcating the economic claims from the divorce claim and subsequently entering the divorce. Therefore, the September 10, 1990 order of the court entering a final decree in divorce should be affirmed.

