**Davis v. Davis**

*Joan B. Stuart,* for plaintiff.
*James Dalton,* for defendant.

BRODY, *J.,* June 12, 1992—

### BACKGROUND

The parties to this action were married on December 16, 1961. The plaintiff, Judith Davis, filed a divorce complaint on June 28, 1989, alleging the marriage to be irretrievably broken. The defendant, Grant J. Davis, filed a counter claim also asserting that the marriage was irretrievably broken, and on September 16, 1990, husband

filed an affidavit of consent pursuant to §201(d) of the Divorce Code. The wife filed an affidavit of consent under 201(c) signed on or about January 2, 1991. On February 12, 1991, upon the praecipe to transmit the record filed by the wife, the Honorable William T. Nicholas entered an order finding the record set forth a valid cause of action under §201(c) or §201(d) of the Divorce Code, deferring entry of a decree in divorce, and setting a hearing on the pending financial matters. The parties have been living separate and apart since on or about June 6, 1988.

In November of 1990, wife was diagnosed as having a malignant brain tumor. In December of 1991, Dr. Gregory Cooper, M.D., stated that wife's life expectancy was not more than a couple of months. In Dr. Cooper's opinion, wife's condition prohibited her from taking part in a deposition. In early January 1992, wife died as a result of the brain tumor.

The parties have six children, two of whom continued to live at the marital home with their mother at the time of these proceedings. Jill attends her first year in college and Jency, the youngest is a sophomore in high school at the Academy of the New Church. Husband has refused to pay for tuition for Jency for the Academy of the New Church.

Wife's resources are very limited. Her primary asset is her joint interest in the marital home in Bryn Athyn, held as tenants by the entireties. She has accrued sizable debt for school loans for the benefit of her children, credit card debt and legal fees which remain outstanding. She also holds with husband a joint partnership interest in a commercial property under a lease with 25 years re-

maining which now produces approximately $75,000 per year in income.

Husband stated his reasons for the separation to be "survival" explained as both financial and religious differences. Husband was at one time a member of the Academy of the New Church, but he now is intensely opposed to the church which his wife supports. He stated that the religious problems between the parties were at least of 15-years duration, going back to the 1970s. At the time of the bifurcation, husband objected to his daughter completing high school at church school. He later stated that she may finish there.

## APPLICABLE LAW

The Pennsylvania legislature has made clear their intent to permit bifurcation. See Pa.R.C.P. 1920.52(C); See also 23 Pa.C.S. §3323(c). "However, there is no requirement which mandates bifurcation nor obligates the court to find clear and compelling necessity before it bifurcates a proceeding." *Wolk v. Wolk,* 318 Pa. Super. 311, 314, 464 A.2d 1359, 1360 (1983). (emphasis added)

"A trial court has discretion to sever economic claims from divorce claims." *Leese v. Leese,* 369 Pa. Super. 104, 105, 534 A.2d 1101, 1102 (1987) (citing *Fenstermaker v. Fenstermaker,* 348 Pa. Super. 237, 249, 502 A.2d 185, 191 (1985)). The trial court's decision should be made only after the advantages and disadvantages have been carefully analyzed. *Wolk* at 317, 464 A.2d at 1262. Based on a review of the facts of the case, if the trial court decides the advantages of bifurcation outweigh the disadvantages, it should grant the petition. *Id.* It is not required that compelling reasons be shown. *Id.* "The

eventual decision should be the approach which is fair to both parties." *Id.* (emphasis added)

A lower court's decision granting bifurcation must be reviewed using an abuse of discretion standard. *Id.* "So long as the trial judge assembles adequate information, thoughtfully studies this information, and then explains his decision regarding bifurcation, [the reviewing court must] defer to his discretion." *Id.*

## ANALYSIS

The instant case presented unique circumstances under which this court was required to act. Frequently mentioned reasons for granting bifurcation are: tax advantages, freeing the parties so that they can restructure their lives, and encouraging the settlement of the property distribution. See *Id.*

The plaintiff in this case sought bifurcation for exceptional reasons.

Bifurcation in this case had the advantage of permitting this court to grant wife's wish to end her life divorced and disassociated with husband whose religious beliefs conflict her own. The marriage had been suffering from the parties religious differences for at least 15 years and the parties had been living separate and apart for more than two years. This was evidence of the broad differences between the parties values and beliefs. It is because of these differences that wife had sought to end her affiliation with the husband. Based on the importance of the freedom of religion and freedom of association in our society, one should not be required to remain legally united until death with another who does not share the same fundamental values and beliefs.

18

Bifurcation allowed wife to dispose of her share of the marital property, acquired over a 30-year period, in whatever manner she deemed appropriate. The discrepancy in the parties life views makes this particularly appropriate. Wife desired that a portion of her assets would go to support the Academy of the New Church. A party has a vested right to an equitable share of the marital property once the divorce decree has been entered. *Taylor v. Taylor,* 349 Pa. Super. 423, 429, 503 A.2d 439, 442 (1986). The right to the distribution of marital property survives the death of one of the parties. *Id.* In the instant case, where the death of one of the parties was imminent, it was appropriate to grant bifurcation in order to assure wife her right to a fair distribution.[*]

The Divorce Code has set forth a policy to "effectuate economic justice between the parties who are divorced or separated ... and insure a fair and just determination and settlement of their property rights." 23 Pa.C.S. §3102(a).

It was clear that without bifurcation, the parties divorce would not be final before wife's imminent death and consequently, the right to all the marital property would vest solely in husband. See generally *Leese v. Leese,* 369 Pa. Super. 104, 107, 534 A.2d 1101, 1103 (1987). This would not effectuate a fair and just settlement of the property rights, but instead would unjustly enrich husband.

Absent a granting of bifurcation, husband's incentives lay in delaying settlement in the hopes that wife would die before the legal process resolved both the divorce

---

[*] An "[e]quitable result will be achieved if a bifurcated decree is entered which vests the rights of the parties to a distributive share of the marital property." *Leese v. Leese,* 369 Pa. Super. 104, 108, 534 A.2d 1101, 1103 (1987).

issues. Once the divorce is granted, the husband no longer has that discouragement to settle and the discussions can proceed. This incentive to settle is an important advantage to bifurcating the divorce.

Husband would prefer that his marriage to wife not conclude in a divorce, but instead by the death of wife. He states that bifurcation will harm the parties' children by having the marriage end in divorce. Husband has failed to show that the harm caused by granting the divorce is so great to outweigh the harm to the children caused by having their mother remain, up until her death, in a marriage to which she is deeply opposed.

Husband contends that he will be disadvantaged in the equitable distribution proceedings brought about by the operation of the Dead Man's Rule, which would render him incompetent as a witness against his wife's estate. See *Wolk v. Wolk,* 318 Pa. Super. 311, 317, 464 A.2d 1359, 1362 (1983). This court holds that this disadvantage is not so great as to outweigh the advantages of granting bifurcation in this case.

## CONCLUSION

This court has carefully considered the advantages and disadvantages of bifurcation in this unusual case. In order to promote a fair resolution of this marriage and to allow wife to disassociate herself from husband before her death, it was deemed necessary to grant wife a bifurcated divorce proceeding.