**Sharon S. BONAWITS, Appellant,**

v.

**Malcolm W. BONAWITS, Appellee.**

Superior Court of Pennsylvania.

Argued April 25, 2006.

Filed Aug. 29, 2006.

Sydney C.H. Benson, York, for appellant.

Brian J. Cali, Dunmore, for appellee.

BEFORE: HUDOCK and PANELLA, JJ. and McEWEN, P.J.E.

OPINION BY HUDOCK, J.:

¶ 1 Sharon S. Bonawits (Wife) appeals from the order of the trial court granting the petition for bifurcation filed by Malcolm W. Bonawits (Husband) in their divorce action. At issue in the present case is the question of whether the trial court properly granted bifurcation pursuant to newly amended section 3323 of the Divorce Code, 23 Pa.C.S.A. sections 3101–3904. We affirm.

¶ 2 The facts and protracted procedural history may be summarized as follows: The parties were married on August 17, 1974, and separated in May of 2001 when Wife left the marital residence. They have no children. Wife filed a divorce complaint on February 26, 2002. Following the filing of numerous pleadings by each party, master's hearings were held on May 10, 2004, and September 8, 2004. At the second hearing, Wife's counsel placed on the record the terms of the parties' proposed marital settlement agreement. Subsequently, transfers were made between the parties pursuant to this agreement.

¶ 3 On January 3, 2005, Wife terminated her employment of counsel who negotiated the marital settlement agreement and retained new counsel. New (present) counsel informed Husband's counsel that he did not consider the agreement valid.

Wife would also not agree to Husband's request for bifurcation and, in fact, filed several motions, including a complaint for support and a petition for alimony *pendente lite*. Thus, on February 2, 2005, Husband filed a petition for bifurcation. Wife filed her answer to the petition on February 24, 2005, and a hearing was held on the petition and other related matters on April 11, 2005. By order and opinion filed July 14, 2005, the trial court granted Husband's petition. A divorce decree was entered on August 10, 2005. This timely appeal followed. Both Wife and the trial court have complied with Pa.R.A.P. 1925.

¶ 4 Wife raises the following issues on appeal:

*QUESTION 1:* Did [Husband] establish grounds under 23 Pa.C.S.A. § 3323(g) for the granting of a bifurcation order?

*QUESTION 2:* Has [Wife] been afforded sufficient economic protections as to allow the granting of a bifurcation and divorce decree?

Wife's Brief at 4. Because both of Wife's issues concern the trial court's granting of bifurcation, we will address them together.[1]

¶ 5 Bifurcation, *i.e.*, the severance of divorce claims from economic claims, is authorized by the Divorce Code. *Savage v. Savage,* 736 A.2d 633, 644 (Pa.Super.1999). When reviewing the grant of bifurcation, this Court employs an abuse of discretion standard. *Brian,* 872 A.2d at 845 (citation omitted). "So long as the trial judge assembles adequate information, thoughtfully studies this information, and then explains his decision regarding bifurcation, we defer to his discretion." *Id.* Our Supreme Court has defined an "abuse of discretion" as "[n]ot merely an error of judgment, but if in reaching a

conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence [of] record, discretion is abused." *Zullo v. Zullo,* 531 Pa. 377, 613 A.2d 544, 545 (1992).

¶ 6 This case involves the interpretation and implementation of newly amended section 3323 of the Divorce Code. This section now reads, in pertinent part, as follows:

**§ 3323. Decree of Court**

(a) **General rule.**—In all matrimonial causes, the court may either dismiss the complaint or enter a decree of divorce or annulment of the marriage.

(b) **Contents of decree.**—A decree granting a divorce or an annulment shall include, after a full hearing, where these matters are raised in any pleadings, an order determining and disposing of existing property rights and interests between the parties, custody, partial custody and visitation rights, child support, alimony, reasonable attorney fees, costs and expenses and any other related matters, including the enforcement of agreements voluntarily entered into between the parties. In the enforcement of the rights of any party to any of these matters, the court shall have all necessary powers, including, but not limited to, the power of contempt and the power to attach wages.

\* \* \*

(c.1) **Bifurcation.**—With the consent of both parties, the court may enter a decree of divorce or annulment prior to the final determination

---

1. A divorce decree entered pursuant to a bifurcation order is a final and appealable or-

der. *Brian v. Brian,* 872 A.2d 843, 845 (Pa.Super.2005).

and disposition of the matters provided for in subsection (b). In the absence of the consent of both parties, the court may enter a decree of divorce or annulment prior to the final determination and disposition of the matters provided in subsection (b) if:

(1) grounds have been established as provided in subsection (g); and

(2) the moving party has demonstrated that:

(i) compelling circumstances exist for the entry of the decree of divorce or annulment; and

(ii) sufficient economic protections have been provided for the other party during the pendency of the disposition of the matters provided for in subsection (b).

\* \* \*

(g) **Grounds established.**—For purposes of [subsection (c.1) ], grounds are established as follows:

(1) In the case of an action for divorce under section 3301(a) or (b) (relating to grounds for divorce), the court adopts a report of the master or makes its own findings that grounds for divorce exist.

(2) In the case of an action for divorce under section 3301(c), both parties have filed affidavits of consent.

(3) In the case of an action for divorce under section 3301(d), an affidavit has been filed and no counter-affidavit has been filed or, if a counter-affidavit has been filed denying the affidavit's averments, the court determines that the marriage is irretrievably broken and the parties have lived separate and apart for at least two years at the time of the filing of the affidavit.

23 Pa.C.S.A. § 3323.

¶ 7 By enacting Act 175 of 2004, the legislature deleted former subsection 3323(c) and replaced it with subsection (c.1) and (g), effective January 28, 2005. Because of its recent enactment and effective date, our research has revealed no cases that discuss these subsections. Prior to amendment, trial courts, when determining whether bifurcation should be granted, weighed the advantages and disadvantages of such an order. *See generally, Wolk v. Wolk,* 318 Pa.Super. 311, 464 A.2d 1359 (1983). As noted in the Source and Official Comments following the rule:

New subsection (c.1) rejects the weighing of advantages and disadvantages under [*Wolk, supra* ], rejects any notion of automatic bifurcation and statutorily provides for bifurcation with the consent of both parties. In absence of consent, bifurcation is permitted *only* under the limited circumstances provided for under paragraphs (1) and (2).

Part of the reasoning behind paragraph (1) is the idea that knowing bifurcation is not available until the separation period has run might motivate a party to move the process along by being cooperative in discovery and participating in the resolution of economic issues. Subsection (g) provides when grounds are established.

Paragraph (2) is intended to limit bifurcation to cases where compelling circumstances exist and where economic protections have been provided the other party. Paragraph (2) contemplates that the court will exercise its judgment as to what constitutes "compelling circumstances" and "sufficient economic protections."

23 Pa.C.S.A. § 3323, Source and Official Comments.

¶ 8 As noted above, Wife would not consent to bifurcation. Thus, before granting Husband such relief, the trial court was required to find that grounds for divorce existed under subsection 3323(g) and that, pursuant to subsection 3323(c.1), Husband demonstrated that compelling circumstances existed for the entry of a divorce decree and that Wife has been provided with sufficient economic protections during the disposition of economic issues still unresolved between the parties. The trial court concluded that Husband had met this burden:

> The transcript of the colloquy of the Divorce Master on September 8, 2004, indicates that [the parties] each executed an Affidavit of Consent for a no-fault divorce. Moreover, the Divorce Master asked [Wife] if she was desirous of the Court accepting the Affidavit of Consent and using it for the basis for granting a divorce. [Wife] stated that she would like the court to accept the affidavit and use it as a basis for granting the divorce.

> \* \* \*

> Instantly, the record before the Divorce Master is clear that the parties have consented to the divorce. Although [Wife] has now filed a Complaint for Support and a Petition for Alimony Pendente Lite, she has stated on the record that she is desirous of having the court accept the affidavit of Consent and having the court use it as a basis for granting the divorce. Due to the lengthy and arduous litigation between the parties as well as the economic protections afforded [Wife], as demonstrated by the transfer and conveyance of significant marital assets to [Wife], we believe that bifurcation of the [divorce and economic] issues is warranted here. The parties ostensi-

bly had an Agreement concerning the economic division of marital assets and liabilities. Although the record indicates that some issues were to be resolved between the parties, approximately ninety per cent (90%) of the real and personal property was transferred to one party or the other pursuant to the Agreement. Sometime after, [Wife] fired her counsel at the time of the Agreement and hired new counsel who filed a Complaint for Support and a Petition for Alimony Pendente Lite. [Wife] is also contending that the Agreement was simply a colloquy and not a settlement agreement.

> In weighing the advantages against the disadvantages, we must look to the record made on September 8, 2004, and determine whether the parties consented to a divorce. The record clearly shows that each [party] consented to the divorce. In addition, the parties have inquired how their continued marital status [affects] their personal income taxes. By granting the bifurcation each party can file their taxes individually. The bifurcation also allows each party to move on with their lives.

> We believe that [Husband] has established that compelling circumstances exist allowing the entry of the decree of divorce. First he set forth that the parties have lived separate and apart for almost four years. Secondly, he established that sufficient economic protections have been provided for [Wife]. Third, he avers that the alleged Agreement between the parties, which was procured with their respective counsel and financial advisors, [has] provided [Wife] with significant assets. Most significantly, [Wife] has not set forth any legitimate reasons to deny the bifurcation order.

Trial Court Opinion, 7/15/05, at 2–4.[2]

■ ¶ 9 Wife first asserts that grounds for divorce were not established under subsection 3323(c.1)(1). She argues that her signing of the affidavit of consent, pursuant to section 3301(c), on September 8, 2004 was conditioned upon her belief that the agreement entered into that day would settle all economic claims between the parties. Our review of the record reveals no such conditional language by Wife. In fact, the discussions of counsel while placing the agreement on the record readily reveals that values for certain assets had yet to be determined and that some assets were not included in the agreement.[3]

■ ¶ 10 Alternatively, Wife claims that subsection 3323(g)(2) requires the "filing" of the affidavits of consent, and notes that the affidavits in this case were not filed with the prothonotary until November 3, 2005, five months after bifurcation was granted. According to Wife, "[p]rocedurally, the court *could not* grant the divorce because the grounds provided for in section (g)(2) of the divorce code had not been established as required by the [code's] language 'in the case of an action for divorce under section 3301(c), both parties have "filed" affidavits of consent.[' "] Wife's Brief at 10. Our review of the record supports the conclusion that the affidavits in this case were "filed," for purposes of section 3323(g)(2), when accepted by the divorce master. To reverse the trial court's bifurcation order on the basis that the affidavits of consent were not filed with the prothonotary until after bifurcation, as well as the divorce decree, was entered would elevate form over substance.

¶ 11 Wife next argues that the trial court erred in granting bifurcation because Husband did not prove that compelling circumstances existed or that she has been afforded sufficient economic protections. We shall consider each claim individually.

■ ¶ 12 Wife states that, because Husband failed to assert compelling circumstances in his bifurcation petition,[4] the trial court created them for him and, "upon further review," the reasons given by the trial court are not compelling. We cannot agree. Because the phrase "compelling circumstances" is not defined in the statutory section or the Divorce Code, we must resort to the canons of statutory construction. As cited by Wife, "Our Supreme Court has stated that the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute." *Smith v. Paoli Memorial Hospital*, 885 A.2d 1012, 1017 (Pa.Super.2005) (quoting *Commonwealth v. Gilmour Manufacturing Company*, 573 Pa. 143, 822 A.2d 676, 679 (2003)). In other family law contexts, this Court has determined that the term "compelling" is at least as stringent a requirement as "convincing" evidence. *See e.g. In re Anderson*, 317 Pa.Super. 490, 464 A.2d 428, 429–30 (1983) (discussing "compelling

---

**2.** The court referenced the weighing of disadvantages under *Wolk, supra.* However, as Husband's petition was filed after the effective date of the new amendment, the proper determination is made under subsection 3323(c.1). Nevertheless, we note that, despite this statement, the trial court discussed the proper considerations before granting the bifurcation petition.

**3.** The validity of the agreement is not at issue in this appeal.

**4.** Although Husband filed his petition pursuant to the now deleted section 3323(c), his brief in support of the petition addresses the newly amended statute. Moreover, while not categorized as "compelling" in his petition, Husband listed thirteen "circumstances" justifying bifurcation.

reasons" in context of termination of parental rights). *See also Watters v. Watters*, 757 A.2d 966, 969 (Pa.Super.2000) (discussing in child custody dispute that, absent "compelling reasons," siblings should be raised together); *Pilon v. Pilon*, 342 Pa.Super. 52, 492 A.2d 59, 60 (1985) (same). We see no reason to define the term "compelling reasons" differently in the present context. Thus, we shall determine whether the trial court had "convincing" reasons for granting bifurcation.

¶ 13 Wife argues that the trial court really only gave one reason for finding compelling circumstances, *i.e.*, the fact that the parties have lived separate and apart for almost four years, because the other reasons listed, sufficient economic protections have been provided and the fact that Wife has been given enough assets, should be considered only with regard to section 3323(c.1)(2)(ii). According to Wife: "There would be no need for the compelling circumstances language if the legislature wanted sufficient economic protections, alone, to justify a bifurcation. Using the lower court's logic, one party having sufficient economic assets would qualify as compelling circumstances. If this is what the legislature intended, then they would have put only one requirement for [bifurcations], namely 'sufficient economic protections' for the nonmoving party." Wife's Brief at 12–13.

¶ 14 We are not convinced by Wife's argument that economic factors can not qualify as a "compelling circumstance" under section 3323(c.1)(2)(i). Her claim would be more persuasive had the trial court relied solely upon the economic situation of the parties. However, in finding compelling circumstances, the trial court

considered not only the economic holdings by the parties to this multi-million-dollar marital estate, but also considered the fact that the parties have lived separate and apart for four years. While we agree with Wife that this situation is commonplace among spouses who are divorcing, Wife misapprehends the import of this circumstance. As noted by the trial court, allowing for bifurcation at this time would allow both parties to get on with their lives. In addition, the trial court considered the tax ramifications of remaining married. Wife asserts that both she and Husband could already file individually by simply "checking the box that says 'married filing separate.'" Wife's Brief at 13. Once again, it is not the capability of filing separate returns that provides a compelling circumstance, but rather, the possible tax advantages of filing individually. Finally, we are not persuaded by Wife's argument that granting bifurcation due to the "lengthy and arduous" litigation between the parties actually provides a "huge disincentive to be cooperative in the divorce proceedings." Wife's Brief at 13. Our review of the record reveals that Husband has cooperated in the resolution of the economic issues between the parties.[5]

¶ 15 In her final argument, Wife asserts that section 3323(c.1)(2)(ii) was not met because sufficient economic protections were not granted to her. Contrary to Wife's claim in her brief, both Husband and the trial court are aware that the agreement entered into on September 8, 2004, did not dispose of all economic issues. Moreover, the record supports the trial court's finding that a large majority of the marital assets have been transferred between the parties and that Wife has

---

**5.** The trial court also considered the fact that Wife failed to proffer legitimate reasons why bifurcation should not be granted. We do not read the newly amended statute to require the non-moving party to do so. Nevertheless, we conclude that such a consideration is appropriate when considering the reasons for bifurcation presented by the moving party.

received sufficient cash and property to continue to assert her claims. Indeed, Wife has challenged the validity of the parties' agreement, even though some distribution according to its terms has occurred, including a cash payment of $250,000.00 to Wife. Moreover, we cannot agree with Wife's contention that part of the reason she lacks "sufficient economic protections" is because the court has not acted on her petition for alimony *pendente lite* and support complaint. Wife's Brief at 17. The record reveals that the trial court stayed these proceedings pending determination of the validity of the parties' September 2004 agreement. As Wife has raised this challenge, she cannot now complain of the trial court's "inaction." *See* Order of Court, 3/14/05.

¶ 16 Order affirmed.